## THE TOWN OF HIGHGATE v. THE STATE OF VERMONT.

*Towns. Highways and Bridges. Acts of 1884, Nos. 11 and 18. Aid from the State. Construction of Statutes. Constitutional Law.*

1. Two statutes, Nos. 11 and 18, Acts of 1884, related to the same thing, the same class of persons, and had the same object in view, namely, relief to towns excessively burdened in building or rebuilding their bridges. The remedy afforded by one is against the State, and by the other against an adjoining town; *Held*, that they were *in pari materia*, and should be construed as one statute.

2. Construing both acts as one in a proceeding against the State, commissioners should be sworn, and there should be an apportionment of expenses, the same as in a proceeding against a town.

3. CONSTITUTIONAL LAW. Act No. 11, Acts of 1884, granting aid from the State to a town excessively burdened in building its highways and bridges, appropriated no specific sum therefor, but directed the auditor to draw orders on the state treasurer for the amount required by judgments rendered by the

courts against the State in proceedings under the act; and at the same session a general appropriation act was passed " for the purpose of paying such demands against the State as may be allowed by the auditor of accounts"; *Held*, that the statute does not violate that section of the Constitution which provides that " no money shall be drawn out of the treasury, unless first appropriated by act of legislature."

4. EQUAL TAXATION. A general statute, applying to all highways under like conditions, granting aid from the State to towns excessively burdened in building or rebuilding highways, does not violate the principle of equal taxation.

PETITION under No. 11 of the Acts of 1884. Heard on the report of commissioners, September Term, 1885, Franklin County, WALKER, J., presiding. Petition dismissed.

The petition was signed by the selectmen of Highgate. The practice in this case was like that in *Sheldon* v. *State of Vermont*, *ante;* that is, the petition and citation were served on the state's attorney; there was a recognizance; commissioners were appointed, and they returned their report to the County Court. The petition set forth :

" That said town deems itself excessively burdened by being required to build and maintain the necessary highways and bridges lying and being wholly in said town; that said town is burdened with the expense of building and keeping in repair a large amount of highways in said town, for the convenience and travel of the public; that in addition to said highways the said town is compelled to build, maintain and keep in repair, at great expense, seven bridges which cross what is called Rock River, which said bridges lie wholly in said town, and have to be maintained at the sole expense of said town; that said town is compelled to build and maintain about three hundred rods of marsh bridges, or wharf roads, in the west part of the town, near the shores of Lake Champlain, at a great expense to said town, which expense has to be borne wholly by said town; that said town is compelled to build and maintain a large bridge at a great expense across what is called Hungerford Brook, which is incurred wholly at the expense of said town; that the said town is compelled to build and maintain a long covered bridge which crosses the Missisquoi River at East Highgate, which is also wholly at the expense of said town; that said town is compelled to build and maintain a long covered bridge across the said Missisquoi River at Highgate Falls at great expense, which has to be borne wholly by said town of Highgate, besides quite a large number of other small

bridges which lie in said town, which are of great expense to the said town of Highgate, and said town feels itself excessively burdened by being required to build and maintain the aforesaid bridges and highways."

The commissioners found:

"We find that the town of Highgate is obliged to build and maintain, wholly in said town, seven bridges across Rock River, the average cost of suitable bridges across said river being about $500 each, a large bridge across Hungerford Brook, a large and expensive bridge across the Missisquoi River at East Highgate, about 300 rods of graded highway on the shore of Lake Champlain, and the bridge in question at Keyes Falls, besides a number of smaller bridges and culverts; that said bridges and culverts have been built and maintained by said town at large and unusual expense; that owing to the formation of the land and soil, and the number of highways in said town, the town is at a large annual expense to maintain its ordinary highways.

"We find that the grand list of the town of Highgate is $7,600, and the population about 2,000, and the present bonded indebtedness of said town is $37,000; said $37,000 being the balance now remaining unpaid of the $50,000 of bonds of said town, which were issued by vote of said town, in aid of the construction of the Lamoille Valley railroad, and being the only indebtedness now outstanding against said town; that the town tax for the past ten years for ordinary town expenses has been from 40 to 60 per cent on a dollar of the grand list of said town, and to rebuild said bridge would require a tax of about 200 per cent on the dollar of the grand list of said town; and not taking into account the bonded indebtedness of said town, we find that it would be excessively burdensome to the taxpayers of said town to rebuild said bridge and abutments, and approaches thereto; and that the bridge is situated upon a thoroughfare much traveled by the general public, and that the towns of Franklin, Swanton, Sheldon and St. Albans will be benefited and accommodated by the use and travel of their inhabitants over such bridge.

"We find that the sum necessary to construct a proper bridge across the river at said point, with proper abutments and approaches thereto, will be $14,000, and the time required to construct said work will be six months.

"By request of the state's attorney, we find and report the

following facts : That there was no evidence before us showing that the indebtedness of the town of Highgate was any larger or more burdensome to the taxpayers of said town than that of Sheldon, Swanton or St. Albans ; that the bridge in question, and the one at East Highgate, are the only bridges over the Missisquoi River that are maintained by the town of Highgate ; that the towns of Swanton, Sheldon, Enosburgh and Berkshire each maintain two bridges over said river, and that the number of bridges that are maintained by other towns on smaller stream was not shown ; that there was no evidence before us of any expense that had been incurred by said towns by reason of their highways and bridges, other than the expense incident to maintaining said highways and bridges, such as rebuilding and repairing the same, and such as said town has maintained for many years past, and is by law required to build and maintain ; that while the bridge in question is a convenience to the people of many towns, and to all of those named in the petition in this case, it is at the same time not only a convenience, but a necessity to a greater portion of the inhabitants of the town of Highgate.

" By request of petitioner's counsel, we further find and report that the burden of said town of Highgate, in being required to build and maintain the Keyes bridge, and other bridges and highways in said town, is greater, relatively, than that resting on either of the other towns benefited by the use and travel of its inhabitants over said bridge, except the town of Sheldon, in the building and maintaining of the other bridges and highways in said towns respectively ; and that the said town of Highgate is excessively burdened by being required to build and maintain said Keyes bridge, as compared with the burden imposed on other towns in said county by law to build and maintain bridges in said towns respectively, except the towns of Richford and Montgomery, in regard to whose burdens no evidence was offered."

*C. G. Austin*, *J. A. Fitch*, and *Cross & Start*, for the petitioner.

The petition to the court, the appointment of commissioners, the commission to the commissioners, and the report of the commissioners, show that all the requirements of the statute have been complied with. No. 11, Acts of 1884 ; *Woodstock v. Gallup*, 28 Vt. 590.

The power to prescribe how and when highways and bridges shall be laid out, built, repaired and maintained, under whose supervision, and how the expenses thereof shall be paid, and by whom, is vested solely in the legislature. The power is not limited by any constitional provision, except the general limitation that taxation shall be equal, and that private property cannot be taken for public uses without an equivalent.

The legislature early exercised this power, and from time to time since. See Revision of 1808, p. 445 ; do. 1824, p. 457 ; Rev. Stat. p. 123 ; Comp. Stat. p. 161 ; Gen. Stat. p. 193 ; Rev. Laws, s. 2913.

The County Court has jurisdiction. The jurisdiction thus conferred is analogous to the jurisdiction of the court in other highway cases which is a limited jurisdiction. *State* v. *Williston et al.* 31 Vt. 157. The court has jurisdiction only in cases mentioned in the first section of the act. When such a case is before it, it shall render judgment as provided in other highway cases. What these words mean was commented on fully by POWERS, J., in *Sharon* v. *Stafford*, 56 Vt. 421. As to the jurisdiction of the court in the highway cases, *see* R. L. ss. 2941–4, 2969, 2975. Upon what question, the jurisdiction having attached, is the court required to pass upon by its judgment? It is submitted that is simply and solely the question as to whether or not the bridge, highways or repairs ought to be required to be built, made or maintained. It is simply whether a bridge, which a town is bound by general laws to build, maintain and keep in repair, and which, on account of long use and decay, has become wholly unfit for use and dangerous to travel, and which it is not advisable or profitable to repair, should be rebuilt. All other questions involved in the case are jurisdictional. Jurisdiction is conferred on the court to pass upon said question by its judgment in these cases. *First.* Whenever any town deems itself excessively burdened by being required to build and maintain any highway or bridge being wholly in such town ; or *Second.* When

such town is under the necessity of rebuilding any bridge or highway in such town; or *Third.* When any town is obliged to lay out money in the repair of roads established and already laid out in said town; and, When the highway or bridge is one which the town is bound by general law to build, maintain and keep in repair, and when other towns in the vicinity are deemed to be benefited.

*George W. Burleson,* for the State.

The report finds that on the hearing before the commissioners no evidence was introduced of any expense incurred by said town by reason of its highways and bridges, other than the expense incident to building and maintaining the same, as said town is by law required to do under its common duty.

The report further finds, that while the bridge in question is a convenience to many towns, it is not only a convenience but a necessity to the greater portion of the inhabitants of Highgate.

The petitioning town is not entitled to the relief prayed for, if the bridge in question is a necessity to any of the inhabitants of the petitioning town. Laws of Vermont, 1884, No. 18.

It was not the intention of the legislature to remove the burden, or any part of it, from the town, where the other towns are especially benefited by such bridge, now carrying burdens, considering population and grand list as great or greater than the petitioning town. *Weybridge* v. *Addison,* 57 Vt. 573.

The commissioners, in substance, find that the town of Sheldon is as much burdened as the town of Highgate, and do not state the grand list or debt of the towns of Sheldon or Franklin. By a comparison of the grand lists and indebtedness of two towns named in the petition, as reported, and from which the finding of the commissioners was made, the court will see that the burden resting upon the town of Highgate is not quite five times its grand list; that of Swanton nearly six

times its grand list; that of the town of St. Albans, excluding its village debt, nearly five times its grand list, and including the village debt, over ten times its grand list; and that of the village of St. Albans alone, excluding the town debt, over ten times its grand list.

So that from the facts reported the court must say upon this question that the petitioning town has failed to show that it is excessively burdened, even if the view taken by the commissioners of the matters to be considered in determining that question is held to be correct.

It is the policy of the State to make each town sustain the burden of building the roads and bridges within its limits; and, as a rule, such burden is not an excessive one. *Sharon* v. *Strafford*, 56 Vt. 421; *Weybridge* v. *Addison*, 57 Vt. 569.

The opinion of the court was delivered by

VEAZEY, J. It is doubtful if any statute was ever enacted in this State that would admit of so unlimited an expenditure of public money, which was so uncertain and doubtful in its provisions and meaning as No. 11 of the Acts of 1884, relating to highways and bridges. Standing alone, it would require a large amount of interpolation in order to get it into shape suitable to base a judgment upon it. It would be easy to show that it ought to be held void for uncertainty, but for the rule that the interpretation which renders a statute null and void cannot be admitted. Vattel's Rules, No. 16.

But fortunately at the same session, and approved on the same day, another statute (No. 18) was passed relating to the same subject. It is a well settled rule that all statutes *in pari materia*, are to be read and construed together as if they formed parts of the same statute, and were enacted at the same time. Potter's Dwarris on Statutes, p. 145, and cases there cited; Sedgwick on St. and Cons. Law, p. 247, and cases there cited.

"All acts *in pari materia*," said Lord MANSFIELD in *The*

*Earl of Ailesbury* v. *Pattison*, Doug. 29, 30, "are to be taken together as if they were one law." There is no room for question about the rule when statutes are *in pari materia*. When are they such ? The term imports not only similarity, likeness, but identity. In *United Soc.* v. *Eagle Bank*, 7 Conn. 457, the court say : " Statutes are *in pari materia*, which relate to the same person or thing, or to the same class of persons or things." The phrase is applicable to public statutes or general laws, made at different times and in reference to the same subject. It does not apply to private acts of the legislature, conferring distinct rights on different individuals. And so in the case last cited, the charters of various different banks were held not to be *in pari materia*. But the English laws concerning paupers and church leases and bankrupts are regarded as laws *pari materia*. *Rex* v. *Loxdale*, 1 Burr. 445 ; *Duck* v. *Addington*, 4 Term, 447. In Indiana, where at the same session an act was passed fixing the salary of an auditor of a particular county, and also another fixing the salaries of auditors generally, the Supreme Court said that the rule of construction was well settled, viz., to regard these enactments *in pari materia* to consider them as one statute, and give them such an exposition as will sustain what appears to have been the main intent of the law makers. *Board of Coms.* v. *Cutler*, 6 Ind. 354. Also in New York it was decided, where an act passed in 1817 for the construction of the Erie Canal, vested the fee of the lands taken for the purpose in the people of the State, and lands were taken for the construction of the canal under an act passed in 1819, omitting any provision as to title, that the people took the same interest under the act of 1819 as they did under that of 1817. *Rexford* v. *Knight*, 15 Barb. 627. "It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions." Dwarris, p. 189.

The object in view, the subject-matter, the substance of

these two acts, Nos. 11 and 18, is relief to an excessively burdened town as to its highways. Both point to the same thing in substantially the same way, the remedy in one case being against an adjoining town, and in the other against the State; that is, all the towns. They relate to the same thing and to the same class of persons. We think they should be held to be *in pari materia.* Treating the two acts as one for the purpurposes of construction, it is much easier to discern the legislative intent of No. 11, and to give it a construction that will make it serve a useful purpose without danger of abuse.

The provisions of No. 18, requiring the commissioners to be sworn, and that their report should contain a finding upon the question of excessive burden, are wanting in No. 11. There is sound reason for such provisions, and it applies as well where the help is sought from the State as the adjoining town. Treating the two acts as one, we think the legislative intent becomes plain that these provisions of No. 18 should be applied to No. 11.

There is no express provision in No. 11 as to any apportionment of expense between the State and town. It says the commissioners shall report the required expense, and the court shall render judgment as in other highway cases. In other cases, under previous statutes, the court accepted or rejected the report in whole or in part. In No. 18, section 4, there is a provision for an apportionment. There is reason for it where the proceeding is against the State as well as against other towns. We therefore conclude from the fact of an apportionment provision in all previous acts, and of the same in No. 18, and of the large discretionary power given to the court in previous legislation upon the subject of highways, and of the reason being the same, and nothing prohibitory or inconsistent appearing in No. 11, and as both acts are to be taken as one law, that it was the intention of the legislature to give the commissioners and the court the same right as to apportionment under No. 11, as under No. 18. The omission from No. 11 of those natural, usual and reasonable provisions to be

expected in such enactment, can be accounted for only on the supposition that the provisions in No. 18, above specified, and perhaps others, were intended to be applied to No. 11. This brings all the provisions of the two acts, but being in legal effect one act, in harmony, and relieves No. 11 of its incompleteness and uncertainty. Together they constitute a bungling enactment, yet their scope and intent become discernable, and their object capable of reasonable attainment, under restrictions that could not have been intentionally omitted in No. 11. It is to be remembered that the infirmities of No. 11, many of which are not here noted, are extreme, and yet the court must give the enactment force and effect.

The view thus taken is strongly supported by the action of the legislature since this case was argued, in the act approved November 24, 1886, being No. 16 of the acts of this year. That enactment is entitled, "An Act in amendment of No. 11 of the Acts of 1884, relating to highways and bridges." The act begins by saying that "No. 11 * * * is hereby amended so as to read as follows:" Then follows a complete remodeling of the whole act, incorporating all the above specified features of No. 18 of 1884 and others, and repealing several sections of that act. In title and treatment throughout, the present legislature plainly regarded the two acts as one and having supplementary provisions, and gave them legislative construction.

It is objected that Act No. 11, as it does not make an appropriation to meet the drafts upon the state treasury drawn by the auditor under said act, violates section 17, chapter II of the Constitution, which provides that "no money shall be drawn out of the treasury, unless first appropriated by act of legislature."

There was at the same session, Act No. 163, the usual provision of appropriation of a sum named "for the purpose of paying such demands against the State as may be allowed by the auditor of accounts." In this Act No. 11, it provides, section 5, for the auditor to draw orders on the state treasurer for

the amount required, under the judgment of the court, in each case. It is not unusual for the legislature to make an appropriation of a specific sum for a given purpose; but this is not always done and is not always practicable. At every regular session of the General Assembly, a general appropriation act is passed, as was done in 1884, and it is made large enough to cover the estimated expense of all the departments of the State government and proper demands against the State; in addition to that there must be further provision as a definite guide for the auditor in drawing upon that general appropriation. Under the act in question the expense of repairing a highway could not be determined in advance by the legislature. It therefore provided for that to be done by a proceeding in court. We have, first, a general appropriation; second, a provision that the State shall pay a certain class of highway repairs; third, that the amount in each case shall be determined by a court in a proceeding brought for the purpose; fourth, that the court shall appoint a commissioner to have charge of the work and the expenditure of the money; fifth, that the state auditor shall draw orders upon the state treasurer for the amount required, pursuant to the judgment of the court, upon the requisitions of the commissioner.

We think this constitutes an " appropriation by act of legislature," within the contemplation of the Constitution.

Further constitutional objection is made to this act on the ground that it violates the principles of equal taxation. A sufficient answer is that the law is general, and applies to all highways under like conditions. This is not a provision to aid in building or rebuilding a particular highway in a special locality, but to aid in any and all highways which are brought within the conditions provided. Highways being public, the public as a whole have an interest in them all, differing largely in degree as between different sections, it is true; but such is the case between even different sections of a town as to its highways. " To determine an act of the legislature with reference to taxation for a public improvement or a public object, to

4

be unconstitutional, we must see the prohibition contained in the Constitution itself in express terms, or by necessary implication from its terms." Dwarris, p. 451. We do not deem it necessary to extend the discussion on this point, as it seems to us that there is no force in the objection.

The County Court clearly had jurisdiction of the cause ; and although the record does not show a compliance with all the requirements of the statute, it does not show any fact that is necessarily fatal to relief, and as the statute and the practice under it are new, we think the cause should be remanded to be proceeded with in accordance with the holdings here made.

Judgment reversed and cause remanded.