DAVID C. WINEBRENNER, 3RD, SECRETARY OF STATE, *v.* JOHN SALMON ET AL.

[No. 51, April Term, 1928.]

564

*Decided July 16th, 1928.*

The cause was argued before BOND, C. J., PATTISON,. URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Thomas H. Robinson, Attorney General,* and *Herbert Levy, Assistant Attorney General,* for the appellant.

*Isaac Lobe Straus,* with whom was *Ernest F. Fadum* on. the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

By Article 16 of the Constitution of Maryland, known as "The Referendum," the people reserved to themselves power by petition to have submitted to the registered voters of the state, to approve or reject at the polls, any act or part of any act of the General Assembly, if approved by the Governor, or, if passed by the General Assembly over the veto of the Governor. The method of accomplishing this is by a petition signed by the designated number of votes, or percentage (depending upon whether the act to be submitted is a general or a local law), the petition to be filed before the first day of June following the passage of the act. The time for filing may under certain conditions be extended to the thirtieth day of June.

Certain measures, however, are excepted from the referendum, it being provided, among other exceptions, that:

"No law making any appropriation for maintaining the state government, or for maintaining or aiding any public institution, not exceeding the next previous appropriation for the same purpose, shall be subject to rejection or repeal under this section. The increase in any such appropriation for maintaining or aiding any public institution shall only take effect as in the case of other laws, and such increase or any part thereof specified in the petition, may be referred to a vote of the people upon petition."

At its January session in the year 1927, the General Assembly of Maryland enacted chapter 118 of the Acts of said session, which was approved by the Governor March 23rd, 1927. It was designated as an emergency law. It was entitled:

"An act to add four new sections to article 56 of the Annotated Code of Maryland, Edition of 1924, title 'License,' sub-title 'Gasoline Tax,' said new sections to follow section 212 of said article, and to be known as sections 212-B, 212-C, 212-D and 212-E, to provide for the imposition, the disposition of the proceeds for the construction of lateral roads and to Baltimore City and the partial refund in certain cases of an addi-

tional license tax of one and one-half cents per gallon,
in respect of motor vehicle fuels."

The act provided for an increase, after April 1st, 1927, of
the license tax in respect of motor vehicle fuels of one and
one-half cents per gallon; that the State Treasurer should
create a special fund of the receipts from said additional tax
(to be designated as the "lateral road gasoline tax fund")
and to disburse the same monthly (less such sum to be re-
tained by the Comptroller as, in his judgment, should be
sufficient to enable him to pay promptly all claims for re-
funds), one-fifth (less refund exemptions provided for) to
the State Roads Commission for the construction and main-
tenance of the streets and highways of Baltimore City, and
the balance to the State Roads Commission to be used in the
construction of lateral roads; that from and after October
1st, 1927, the entire cost of the construction of lateral roads
built by the State Roads Commission should be paid by the
State out of the revenue derived from the additional tax im-
posed by the act, and that the counties in which such roads
were respectively located should be relieved of their obliga-
tion, under the provisions of any existing law, of providing
funds to defray one-half of the cost of construction of such
roads; that such county's proportionate part of the revenue
derived from such additional tax should be determined by
using the same ratio which the public road mileage of that
county bears to the entire public road mileage in the counties
of the state; that the commission be authorized and directed
to ask for bids and make contracts for the construction of such
lateral roads as it and the county commissioners might from
time to time determine to construct, said contracts to be made
in the name of the State Roads Commission and to contain
and be subject to the same provisions required by existing
law for contracts for the construction of public roads; that
the term "lateral road" should include bridges. The act pro-
vides for refunding the cost per gallon to persons who use
motor vehicles for commercial purposes solely within the lim-
its of incorporated cities or towns.

On May 31st, 1927, appellees, taxpayers and severally residing in Baltimore City and in certain counties of the state, filed a petition in due form and with the required number of signatures with appellant, the Secretary of State, for a referendum upon said act, and requested and directed him to place the question involved in said petition upon the official ballot to be voted at the next general election. Appellant, on being advised by the Attorney General of Maryland that the act was not within the class of laws referable to the people, notified counsel who presented the petition that he would not place said act on the ballot. On March 21st, 1928, appellees filed a petition for mandamus in the Circuit Court for Anne Arundel County. This appeal is from the order of said court that the mandamus issue as prayed.

Appellees contend that chapter 118 of the Acts of 1927 is not within the exception above mentioned because: 1. It is not an appropriation act. 2. If an appropriation act, the appropriation is not for maintaining the State government. 3. If an appropriation for maintaining or aiding a public institution, it is clearly referable, "because the whole tax laid by the act is an additional tax and, therefore, a tax exceeding the next previous tax appropriation for the same purpose."

Our conclusion is:

(1) That it is an appropriation act. Indeed, except that it was passed before the Legislature had disposed of the budget bill, it fulfills in itself all the requirements of a supplemental appropriation act authorized by the budget amendment. Whether the requirement as to the time of consideration of such supplemental appropriation bill is mandatory or directory only, we shall not stop to consider. Assuming that it is not sufficient in itself to authorize the withdrawal from the treasury of the State of the money collected under its provisions, it was at least a direction to the Governor to make the disbursement in the budget to be prepared by him; and the Governor accepted it as such. That act and the budget act are *in pari materia,* and must be construed together as though they constituted one act. *State v. Howell,* 106 Wash.

542; *Sales v. Barber Asphalt Paving Co.,* 166 Mo. 671; *Town of Highgate v. State,* 59 Vt. 39; *People v. Chicago & Northwestern R. R. Co.,* 249 Ill. 170; *People v. Brooks,* 16 Cal. 11.

(2) That the appropriation was for maintaining the State government. In construing the referendum amendment with reference to this exception, it is important to consider the underlying idea in the mind of the Legislature in making the exception. *Beall v. State,* 121 Md. 669. It is apparent that the purpose was to provide against the possibility of the government being embarrassed in the performance of its various functions. Surely, in that view, "appropriations for maintaining the government" include more than merely those which provide for overhead expenses, such as salaries and expenses incident to keeping the government afloat as a going concern. "The government" includes all its agencies, of which the State Roads Commission is one of the most important. And maintaining the government means providing money to enable it to perform the duties which it is required by law to perform. In his able and well considered opinion, the learned trial judge concedes this, and does not accept the narrower view of appellants. But he distinguishes between functions existing at the time the appropriation is made and new functions created by the act making the appropriation. The question thus raised is not free from serious difficulty. Certainly an act would not be within this exception merely because it carried an appropriation to an agency of the government, if it *created* an entirely new function not theretofore recognized as coming within the sphere of governmental activity. But "the establishment, construction and maintenance of public roads is a primary function of government." *Bonsal v. Yellott,* 100 Md. 481. See also *Huffman v. State Roads Commission,* 152 Md. 566.

The beginning of state road legislation in this state was in 1904, when chapter 225 of the Acts of 1904, known as the "Shoemaker Law," was passed. Under this act the work of improving public highways was done under the supervision of the state geological and economic survey, and was

paid for jointly by the abutting property owners, the county, and the State, in the proportions set out in the act. The State Roads Commission was created by chapter 141 of the Acts of 1908, by which act a general scheme was adopted for creating a system of state highways and for the construction, maintenance and reconstruction of such highways at the expense of the State; new construction to be financed by bond issue, and maintenance and reconstruction to be paid for out of general funds until the receipt from motor vehicle taxes should be sufficient to take care of maintenance and reconstruction. For some time the cost of such maintenance and reconstruction has been entirely paid out of motor vehicle and gasoline tax receipts. But until 1924 lateral roads were left to be cared for by the counties alone, or with the assistance of the State under the Shoemaker Act. "By chapter 29 of the Acts of 1922 (codified as Article 41), under which the State government was reorganized, a Department of Public Works was created, of which the State Roads Commission was made the head. This department was designated as one of the executive and administrative departments.

By chapter 277 of the Acts of 1924, provision was made for building lateral and post roads, at the joint expense of the State, county and federal government, the work to be done by the State Roads Commission, and the cost of these roads to be borne equally by the State and federal governments, and the cost of the lateral roads by the State and counties; the State's part of the cost to be derived from the issue and sale of bonds.

In a message to the Legislature in 1927, the Governor recommended an increase of the gasoline tax from two cents to three and one-half cents per gallon, estimating, on the basis of the receipts in 1926 from the two cents per gallon, that the extra one and one-half cents would produce $1,500,-000, which amount he recommended should be appropriated for the construction of lateral roads, "thus relieving the State of its annual contribution of $750,000 each year to the lateral road fund and relieving the counties of their annual contribution of a like annual amount to said fund." He said: "A bill

embodying these recommendations will be submitted for the consideration of the Legislature, and if it is passed then the general road loan bill of $3,250,000 for the next two years should be amended so as to eliminate therefrom the $1,500,-000 which the bill provides as the State's contribution during these two years to lateral roads." In pursuance of this recommendation, chapter 118 of the Acts of 1927 was passed.

It will be seen from the aforegoing sketch of the history of State road legislation.

1. That the increase of the State's functions in reference to building and maintenance of public roads was progressive from 1904 to 1924.

2. That Chapter 118 of the Acts of 1927 added no new functions to those previously exercised by the State in the matter of the work of road construction, as regards the control and management of such work.

Under the Act of 1924 the State Roads Commission was authorized to construct lateral roads to the extent of $1,500,-000 a year. That is the amount of such work it is authorized to do by the Act of 1927. The only difference is that the counties are relieved of the burden of paying half the cost of that work, and the State adds that much to its previous appropriation for that purpose, and derives the whole amount appropriated from the gasoline tax, whereas its previous appropriation was derived from the issue and sale of bonds.

It seems to us that the conclusion of the trial court could only have been reached on the theory that, in imposing on the State the whole burden of paying for the work, instead of half of it, as theretofore, the Legislature created for the State, *pro tanto,* a new function. We cannot accept this theory. The only difference is in the manner and method of exercising a governmental function. But even if that theory were tenable, it does not follow that the mandamus should issue.

The Act of 1927 certainly did not provide for an appropriation for a new function, so far as it directed the State Roads Commission to construct the lateral highways. If it

did so to the extent of the increased financial burden put upon the State (and we do not think it did), and if the imposition of this additional burden was a matter properly referable to the people, that, like any other referable matter in the act, could have been made the subject of a referendum. The referendum amendment expressly provides for the submission of "part of any act." In *State v. Clausen,* 85 Wash. 260, it was argued that there were a number of questions of policy in the act there under consideration which were peculiarly within the purview of the referendum, and that the people should not be precluded from the right to vote on such questions by attaching an appropriation to the act. The answer of the court was: "The people very wisely forestalled the possibility of the situations suggested by counsel, when they reserved the right to refer a part of the bill. Their evident purpose was to prevent the stoppage of the State's established functions pending a vote upon some question of policy."

The petition for a referendum was on the entire act, and for that reason, at least, appellant properly refused to comply with it.

Questions similar to those here involved were considered and decided in accordance with our conclusion in the *Washington* and *Vermont* cases hereinbefore cited, and also in *Detroit Automobile Club v. Deland,* 230 Mich. 623. In their forceful original and supplemental briefs, counsel for appellees argue that these cases are distinguishable from the present case, and that they did not decide that an appropriation for highways was for the support of the state government. They held, however, that the highways department were *state institutions,* and their reasoning does not distinguish the *institutions of a state* from its *government.* Their reasoning would, we think, have led to the same conclusion if the words "public institutions" and "state institutions" had not been parts of the constitutional provisions there under discussion. The case of *State v. Dixon,* 59 Mont. 58,, cited by appellees, gives some support to their theory as to the meaning of "appropriation acts." But the court in that

case was dealing with the initiative power reserved under the constitution of that state. The thing decided was that an initiative measure adopted at a general election, providing for the issuing and sale of bonds, and application of the proceeds thereof to the construction and repair of buildings at various institutions under the control of the state board of education, is not an appropriation act within the meaning of the constitutional inhibition. And the reason for that decision was that it did not provide for taking out of the treasury anything that was already therein, or had been provided for. It does not follow that if the Legislature had passed such an act, and the questions were whether it was referable to the people, the court would hold that it was not an appropriation act. If any such construction can fairly be put on that decision, then we cannot follow it.

*Order reversed, with costs to appellant.*