HARVEY C. BICKEL *v.* HARRY W. NICE,
GOVERNOR, ET AL., CONSTITUTING THE BOARD
OF PUBLIC WORKS OF MARYLAND.
HARRY W. NICE, GOVERNOR, ET AL., CONSTITUTING THE
BOARD OF PUBLIC WORKS OF MARYLAND, *v.*
HARVEY C. BICKEL, ET AL.,
DAVID S. JENKINS *v.* HARRY W. NICE, GOVERNOR,
ET AL., CONSTITUTING THE BOARD OF PUBLIC WORKS OF
MARYLAND.

[Nos. 28, 29, 30, October Term, 1937.]

2

*Decided July 6th, 1937.*

The cause was argued, as of the April Term, before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*William L. Henderson, Assistant Attorney General,* with whom were *Herbert R. O'Conor, Attorney General,* and *Hilary W. Gans, Deputy Attorney General,* on the brief, for the Board of Public Works.

*Willis R. Jones,* for Harvey C. Bickel.

*A. W. W. Woodcock,* with whom was *Noah A. Hillman* on the brief, for David S. Jenkins.

BOND, C. J., delivered the opinion of the Court.

A bill in equity, filed by a taxpayer of Baltimore City and of the State, seeks an injunction against the present issue of bonds of the State by the Board of Public Works, under the Acts of 1937, chapter 368, on the alternative grounds that the statute is unconstitutional, or, if not, cannot take effect as a law and authorize the issue of the bonds unless and until it is approved at the next general election in 1938, because a petition for a refer-

endum has been filed in accordance with article 16 of the Constitution of the State. The court below came to the conclusion that the act was constitutional, but that it was subject to the referendum, and by its decree therefore enjoined issue of the bonds until after the election. All parties have appealed from the decree to the extent that it is adverse to their respective contentions. There are no disputes of fact, and no objections to procedure. The sufficiency of the facts for the issuance of the injunction is questioned by demurrers to the bill of complaint.

On the question of constitutionality, it is contended that the title of the enactment fails to meet the requirement of article 3, section 29, of the Constitution that the subject of an Act of Assembly "shall be described in its title," a requirement the object of which is, "that legislators and the public may be informed by the title of the general nature of the provisions proposed to be enacted, and to prevent deception." *Levin v. Hewes,* 118 Md. 624, 632, 86 A. 233, 235; *Weber v. Probey,* 125 Md. 544, 551, 94 A. 162.

The title is: "An Act to authorize the creation of a State debt in the aggregate amount of not exceeding One Million Dollars ($1,000,000), the proceeds thereof to be used for the purpose of erecting and equipping a new State Office Building in Annapolis, the Capital of the State and to provide generally for the issue and sale of Certificates of Indebtedness evidencing such loan." And the objection is that the specification of only the upper limit for the debt to be created, "not exceeding One Million Dollars," described the statute to be voted on as one committing the State to no definite amount of debt, leaving that fact to the subsequent determination of state officials upon consideration of the needs of the State, while the Act, as construed in the argument, required the issue of the full amount of $1,000,000 of certificates for the building, and the incurring of the debt to that amount. It is averred that in promotion of the enactment the specification of only the amount not to be

exceeded was cited to give assurance that there was no present commitment on amount, and that the determination would be so left to the Board of Public Works.

The first section, following the title, also, in terms, authorizes and directs the Board of Public Works "to issue a State Loan in the aggregate sum of not exceeding One Million Dollars," but provides for the dating of $100,000 of the issue on June 15th, 1937, and $900,000 on June 15th, 1938, and for payment upon a serial annuity plan in which the whole $1,000,000 of certificates are listed for that payment. Section 2 provides for the issue according to the plan, with lettering of the series "beginning with the letter A, and so on down the alphabet until the entire amount of One Million Dollars ($1,000,-000) shall have been issued, so that the entire principal shall be redeemable" in accordance with a list of $1,000,-000 of certificates, their separate amounts, and dates of redemption. And, by section 6, it is required that, after payment of as much of $10,000 as may be necessary for engraving, printing, and other outlays connected with the issue of the loan authorized, "the remainder of the proceeds of said loan * * * shall be used, expended and applied for the acquisition of a site in the City of Annapolis and erection thereon of a State Office Building and the equipment thereof."

The court does not agree in the construction that these provisions require the issue and sale of the full $1,000,-000 of certificates, and therefore does not find a misdescription in the title. There is an appropriation of the entire amount. And as all is appropriated, provision is necessarily made in the Act for the issue of certificates to that aggregate amount. And that, it seems to the court, is the purpose and meaning of references to issue of the entire principal. The appropriation is one made before the project has been reduced to any certainty, and therefore must be for an uncertain expenditure. Determination of the site and its cost, the service to be rendered by a building in housing state offices, and specifications of the building desired for the purpose,

the kind of equipment and its cost, all these facts, so far undertermined, would be necessary to any approach to certainty; and, even after their determination and the making of contracts, some uncertainty would exist, because the exact cost of a building of any large dimensions, including added work and excluding work which may be omitted, is seldom if ever predictable. It results that the amount of debt actually to be incurred by issue and sale of the certificates must be unascertained in the Act, and left for future determination as implied in the title, unless it could be considered possible that the Assembly intended to order a million dollars expended regardless of use for it, and that is too unreasonable to be considered true, unless the words of the Act clearly compel the construction. The court is, as stated, of the opinion that they do not. "If the obvious purpose of an enactment is beyond the literal meaning of the language employed, it will not be restricted in its scope and application by the narrow significance of its words; and equally, too, broad and comprehensive terms will not include that which is not within the design and the object of the statute." *Roland Park Co. v. State,* 80 Md. 448, 451, 31 A. 298, 299.

The provisions for sale of the certificates, section 4, do not compel the sale of all authorized. On the contrary, it is directed that an advertisement for bids shall be published "twice a week for four successive weeks before the said Certificates of Indebtedness, or any part thereof, shall be issued." And saving from an appropriation is a practice which it cannot reasonably be supposed the Assembly meant to prohibit. Finally, all parts of a statute are to be read together to get the intention of any one part, and all harmonized if possible. *Burns v. Baltimore,* 48 Md. 198, 206; *Baltimore v. Deegan,* 163 Md. 234, 238, 161 A. 282. And here we find not only the title but the first section of the body of the act authorizing and directing "a State Loan in the aggregate sum of not exceeding One Million Dollars."

The omission of mention of acquisition of a site in the

title, has given rise to some question, but the court is of opinion that the statement of purpose to erect a building gives notice of this and all other steps which may be found necessary to the erection on the site chosen.

A second question arises from the requirement of section 34 of article 3 of the Constitution that "No debt shall be hereafter contracted by the General Assembly unless such debt shall be authorized by a law providing for the collection of an annual tax or taxes sufficient to pay the interest on such debt as it falls due, and also to discharge the principal thereof within fifteen years from the time of contracting the same." The law which authorizes this debt does provide for a levy in state taxes for successive years, beginning with those for the year 1938, to pay interest and principal in full, and there is no dispute of the sufficiency for the full payment within the fifteen years. It is conceded. See *Gray, Limitations on Taxing Power*, sec. 2144. But it is objected that the levy for 1938 will not be in time to provide money to pay the installment of interest to fall due on the $100,000 on December 15th, 1937, or that on the $900,000 to fall due six months later. The taxes for 1938 were the earliest in which a provision for this debt could be included, but payment would not be due in Baltimore City and other jurisdictions when the first installments of interest would be payable, because in those jurisdictions taxes become collectible only on the first of the calendar year. There is no provision in the budget bill of the 1937 Assembly for meeting the first installments of this interest.

But taxes are not levied and collected in all the counties of the state, under their local laws, as late as the beginning of the next calendar year, and it cannot be said therefore that the next levy will not be in time. See Acts 1929, ch. 226, sec. 28. Advanced payments commonly made would, in all the county jurisdictions together, probably provide a fund sufficient for the payment of the first interest installments. At least, the court could not act upon the assumption that they would not. And there are usually excess collections over needs for other

loans and expenses, and this court concurs in the conclusion of the chancellor below that there is, "no substantial reason to prevent application of excess revenues from other sources until the taxing provision shall become adequately operative," with adjustment, if necessary, from the taxes subsequently collected. In the Acts 1935, ch. 88, and Acts 1937, ch. 339, establishing the tax rates, recognition is given to a practice of using excess revenues from taxes for payment of "the installments of the principal and the interest on the State loans, which are not otherwise provided for." Precedents for exactly the same reliance upon the next tax levy and other available sources for payment of interest on loans to fall due on December 15 following exist in the Acts 1929, ch. 129, and Acts 1931, ch. 248.

The constitutional requirement is mandatory, and not to be evaded or relaxed to meet particular demands. 1 *Jones, Bonds and Bond Securities* (4th Ed.) sec. 554. But its object, to require the Assembly, when incurring an obligation, to meet the problem of punctual payment, seems to be fully met by a provision for raising adequate taxes beginning with the next levy, at least so long as there may be means lawfully available to avoid a default. To hold this appropriation unconstitutional because the ample provision made in the act cannot be realized before the first demand on it, would seem to be stretching the constitutional requirement beyond its objective. See *Gates v. Sweitzer*, 347 Ill. 353, 179 N. E. 837; *Hatfield v. Jordan*, 183 Cal. 223, 190 P. 1030.

A third contention is based on the requirement of subsection C of section 52 of article 3 of the Constitution, that "neither house shall consider other appropriations until the Budget Bill has been finally acted upon by both houses." The bill now in question was first read and referred to the Committee on Finance of the Senate on March 25th, 1937, two days before final action on the budget bill, then pending. But this procedural requirement, too, may be stretched beyond its purpose and intention. We take the purpose of it to be merely to prevent

submission of another appropriation bill to a vote before the final action on the budget bill. Voting is the consideration prohibited; and the mere introduction of an appropriation bill, and its reference to a committee for study, would not, we think, be a matter of concern under the constitutional provision. The contention made might, in practice, defer introduction of all such measures until too late for any consideration; and that fact argues against the construction of the clause by the plaintiff.

The court, therefore, agreeing with the chancellor, finds no sufficient objection to the constitutionality of this act. And this leaves for consideration only the question whether the act is subject to a referendum, on the petition filed, in accordance with article 16 of the Constitution, authorizing referendums for rejection or repeal of legislative enactments. It is a question whether the Act comes within the exception to the general allowance of referendums in section 2 of that article. It is as follows:

"No law making any appropriation for maintaining the State Government, or for maintaining or aiding any public institution, not exceeding the next previous appropriation for the same purpose, shall be subject to rejection or repeal under this Section. The increase in any such appropriation for maintaining or aiding any public institution shall only take effect as in the case of other laws, and such increase or any part thereof specified in the petition, may be referred to a vote of the people upon petition."

In the case of *Winebrenner v. Salmon,* 155 Md. 563, 142 A. 723, 725, the court found that a referendum was not permitted on an appropriation for building lateral roads by means of the proceeds of an increased tax on gasoline, and in the opinion filed stated its conclusion to be that "appropriations for maintaining the government" included more than those which provided the overhead expenses, such as salaries and expenses incident to keeping the government afloat as a going concern. The opinion (155 Md. 563, at page 568, 142 A. 723, 725) agreed in a contention that "an act would not

be within this exception, merely because it carried an appropriation to an agency of the government, if it created an entirely new function not theretofore recognized as coming within the sphere of governmental activity," but found the establishment, construction, and maintenance of public roads to be a primary function of government.

It is clear, besides, that the mere fact of an increase in an appropriation for maintaining one of the functions of government over ordinary amounts would not omit it from the excepting clause, leaving it subject to the referendum, because that clause makes referable only those increases in appropriations which are for public institutions. Selection of these is tantamount to exclusion of a referendum on increases for maintaining the government. *Johns v. Hodges*, 62 Md. 525, 538; *Weckler v. First Nat. Bank*, 42 Md. 581, 593, 20 Am. Rep. 95.

While these pronouncements do not altogether solve the present problem, they do settle for us some principles leading toward the solution. Housing for state officers and employees would seem to be as much a primary function of government as building lateral roads, and equally entitled to be classed as maintaining the government. There might be different degrees of need for the housing, or no need at all, as there might be with lateral roads. Emergencies reducing needed office space, or extension of governmental work increasing the need, might, as argued, render a building indispensable to the maintenance of government; and, on the other hand a proposed building might be unnecessary. It is undoubtedly true that the actuating purpose of the excepting clause was to prevent interruptions of government. But the court is of opinion that the test intended by the excepting clause is not the need of the appropriation or the project to carry out that purpose, but the design. If the particular appropriation is one designed for maintaining the government and the project stated is of a kind that may be within that classification of maintaining the government, it is excepted.

If it were necessary to seek further, taking the degree of need as the test, how should the facts and circumstances determining the need be found? If by the courts, it must be upon evidence *pro* and *con*, in other words, by a trial of the facts. And every appropriation would be open to litigation on evidence to be adduced. This, as stated, is not regarded as the intention of the excepting clause. In *Winebrenner v. Salmon, supra,* the inquiry by the courts stopped with the finding that the building of lateral roads was an activity within the class of those for maintaining the government, without reference to the existing need or lack of it. And so, the court concludes, it must be here, upon the finding that appropriations for housing state offices may be within that class. Final power and responsibility for the decision on the need and usefulness of the building must rest with the General Assembly. The courts have no power to consider the wisdom of the enactment.

On the question of susceptibility of this appropriation to a referendum, then, the conclusion of this court differs from that of the court below.

> *Decree reversed and bill dismissed, with costs.*