209 P.2d 179

**STATE ex rel. LINN v. ROMERO, Secretary of State.**

No. 5211.

Supreme Court of New Mexico.

Aug. 15, 1949.

Rodey, Dickason & Sloan, Frank M. Mims, Jackson G. Akin, Albuquerque, for relator.

Joe L. Martinez, Atty. Gen., W. R. Kegel, P. H. Dunleavy, Asst. Atty. Gen., C. C. McCulloh, Tax Commission Atty., Santa Fe, Louis C. Lujan, Atty. for Bureau of Revenue, Santa Fe, for respondent.

BRICE, Chief Justice.

This is an original action in mandamus. Its purpose is to compel the respondent, Secretary of State of the State of New Mexico to receive and file petitions allegedly signed by 69,205 qualified voters of the State of New Mexico, prepared and signed

as authorized by Sec. 1 of Article 4 of the New Mexico Constitution, the purpose of which is to "disapprove, suspend and annul," a certain act of the Nineteenth Legislative Assembly of New Mexico, being Chapter 42 of the N.M.L. of 1949.

Upon the filing of the application an alternative writ was issued by us commanding the respondent to accept and file the petitions, referred to, or in the alternative to show cause at a time named therein why she has not done so. A response to the writ has been filed, and the cause submitted upon briefs and arguments.

That part of Sec. 1 of Article 4 of the New Mexico Constitution material to a decision is as follows: " * * * The people reserve the power to disapprove, suspend and annul any law enacted by the legislature, except general appropriation laws; laws providing for the preservation of the public peace, health or safety; for the payment of the public debt or interest thereon, or the creation or funding of the same, except as in this constitution otherwise provided; for the maintenance of the public schools or state institutions, and local or special laws. Petitions disapproving any law other than those above excepted, enacted at the last preceding session of the legislature, shall be filed with the secretary of state not less than four months prior to the next general election. Such petitions shall be signed by not less than ten per centum of the qualified electors of each of three-fourths of the counties and in the aggregate by not less than ten per centum of the qualified electors of the state, as shown by the total number of votes cast at the last preceding general election. The question of the approval or rejection of such law shall be submitted by the secretary of state to the electorate at the next general election; and if a majority of the legal votes cast thereon, and not less than forty per centum of the total number of legal votes cast at such general election, be cast for the rejection of such law, it shall be annulled and thereby repealed with the same effect as if the legislature had then repealed it, and such repeal shall revive any law repealed by the act so annulled; otherwise, it shall remain in force unless subsequently repealed by the legislature. If such petition or petitions be signed by not less than twenty-five per centum of the qualified electors under each of the foregoing conditions, and be filed with the secretary of state within ninety days after the adjournment of the session of the legislature at which such law was enacted, the operation thereof shall be thereupon suspended and the question of its approval or rejection shall be likewise submitted to a vote at the next ensuing general election. If a majority of the votes cast thereon and not less than forty per centum of the total number of votes cast at such general election be cast for its re-

jection, it shall be thereby annulled; otherwise, it shall go into effect upon publication of the certificate of the secretary of state declaring the result of the vote thereon * * *."

That part of Chap. 42, N.M.L.1949, necessary to a decision, is as follows:

"That in order to provide the funds necessary for the State Highway Commission to meet its pledged obligations in meeting the payments of principal and interest on State Highway Debentures heretofore issued and sold under authority vested in the State Highway Commission by law; and to provide the funds after meeting the payments of interest and principal on such State Highway Debentures, for the proper and necessary maintenance, improvement, construction, and re-construction of the highways comprising the system of State Highways in New Mexico; for the matching of Federal-aid grants to the State of New Mexico for highway construction work; and to enable the said State Highway Commission to perform such other duties as it is by law required to perform, the existing statutes relative to the levy, imposition, computation, and collection of an excise tax on the sale and use of gasoline and other petroleum products be and the same hereby are amended to read as hereinafter set forth.

Sec. 2. That Section 68-1202 of the New Mexico Compilation of 1941 (Being Section 2 of Chapter 83 of the Session Laws of 1937, as amended by section 2 of Chapter 180 of the Session Laws of 1941) be and the same is hereby amended to read as follows:

" '68-1202. Seven Cents (7¢) Per Gallon Excise Tax.

" '(a) There is hereby levied and imposed an excise tax of seven cents per gallon upon the sale, use, or sale and use of all motor fuel sold or used in this state for any purpose; provided, that this tax shall be collected only once upon any particular motor fuel and where the excise tax has been paid in this state upon the sale a like tax shall not be collected for the use of the same motor fuel, and likewise where the excise tax has been paid in this state upon the use a like tax shall not be collected for the sale of the same motor fuel; provided, further that nothing in this act (Secs. 68-1201—68-1225) shall prohibit any incorporated municipality from assessing and collecting the tax provided for in chapter 159, of the 1931 Session Laws (Secs. 14-3901—14-3908).

" 'The excise tax hereby levied and imposed shall not apply to the sale of motor fuel for export from the state of New Mexico to any other state, territory, or foreign country; provided, that satisfactory proof of actual exportation of all such motor fuel is furnished by the distributor claiming exemption from such tax at the time and in

the manner prescribed by the bureau of revenue.

" '(b) There is also hereby levied and imposed a tax of seven cents per gallon upon motor fuel not purchased in this state but used to propel motor vehicles upon the highways of this state. Said tax is levied as a toll for the use of the highways; provided, however, that the operator of any motor vehicle propelled by motor fuel upon which a tax is levied by this section shall be entitled to have within the regular fuel tank on their motor vehicles upon entering this state not to exceed twenty gallons of motor fuel upon which number of gallons the tax levied by this section shall not apply.

" '(c) It is hereby made unlawful to use gasoline formed by natural processes and commonly known as drip gasoline to operate an internal combustion engine to propel a motor vehicle on the highways in the state.'

"Sec. 3. That Section 68-1203 of the New Mexico Compilation of 1941 (being Section 3 of Chapter 83 of the Session Laws of 1937, as amended by Section 1 of Chapter 104 of the Session Laws of 1939) be and the same hereby is amended to read as follows:

" '68-1203. Tax on Petroleum Products Other Than Motor Fuel—License Required. (a) An excise tax is hereby levied and imposed upon all users of petroleum products, including liquified gases composed of propane, propylene, butane, butylene and diesel fuel, other than motor fuel as defined in this act (Secs. 68-1201–68-1225) for the generation of power to propel motor vehicles on the highways of this state at the rate of seven cents per gallon to be paid and computed as herein provided. The tax hereby levied is a toll for the use by said motor vehicles of the highways of this state. * * *' "

The only question is whether the act in question is a law excepted by Sec. 1 of Article 4 of the State's Constitution from those which the people are given the right by referendum to disapprove, suspend or annul. No other question is presented to us. It is admitted by respondent that the petitions were presented to her for filing, and that she, upon the advice of the Attorney General, refused to accept or file them, because the referendum provision of the Constitution (as she asserts) is not applicable to the act involved for the following specific reasons:

1. The act is a law "for the payment of the public debt or interest thereon, or the creation or funding of the same."

2. The act is a law "for the maintenance of * * * state institutions."

3. The act is a law "providing for the preservation of the public peace, health, and safety."

These subsidiary questions will be considered in the order stated.

First, was the law enacted "for the payment of the public debt or interest thereon."? It was enacted (Sec. 1) "In order to provide funds necessary for the State Highway Commission to meet its pledged obligation in meeting the payment of principal and interest on State Highway debentures heretofore issued and sold under authority vested in the State Highway Commission by law." It is provided also that the funds may be used for highway construction, a matter to be considered in our passing on the second question posed.

Sec. 8 of Article 9 of the state Constitution provides: "No debt other than those specified in the preceding section shall be contracted by or on behalf of this state, unless authorized by law for some specified work or object; which law shall provide for an annual tax levy sufficient to pay the interest and to provide a sinking fund to pay the principal of such debt within fifty years from the time of the contracting thereof. No such law shall take effect until it shall have been submitted to the qualified electors of the state and have received a majority of all the votes cast thereon at a general election * * *."

The authority for issuing the highway debentures involved is Sec. 16 of Article 9 of the New Mexico Constitution, which is as follows: "Laws enacted by the fifth legislature authorizing the issue and sale of state highway bonds for the purpose of providing funds for the construction and improvement of state highways and to enable the state to meet and secure allotments of federal funds to aid in construction and improvement of roads, and laws so enacted authorizing the issue and sale of state highway debentures to anticipate the collection of revenues from motor vehicle licenses and other revenues provided by law for the state road fund, shall take effect without submitting them to the electors of the state, and notwithstanding that the total indebtedness of the state may thereby temporarily exceed one per centum of the assessed valuation of all the property subject to taxation in the state. Provided, that the total amount of such state highway bonds payable from proceeds of taxes levied on property outstanding at any one time shall not exceed two million dollars. The legislature shall not enact any law which will decrease the amount of the annual revenues pledged for the payment of state highway debentures or which will divert any of such revenues to any other purpose so long as any of the said debentures issued to anticipate the collection thereof remain unpaid."

This was an amendment adopted in 1921.

We have concluded that the debentures in question are public debts, and will now state our reasons.

In submitting to the electors the question of whether the provision that is now Sec. 16 of Art. 9 of the State Constitution

should be adopted or rejected as an amendment thereof, the legislature assumed that the highway debentures provided for therein were "public debts" as the words "public debts" are used in Sec. 8 of Art. 9 of the Constitution; otherwise there was no point in its submission. While this construction is persuasive, it is not necessarily binding on us. Sec. 16 of Art. 9 was construed in State v. Graham, 32 N.M. 485, 259 P. 623; but it was assumed for the purpose of *that decision only* that highway debentures were "public debts"; and we held that, whether or not they were, this provision authorized the legislature to provide by law for the issuance of highway debentures without the necessity of submitting the question of their issuance to a vote of the state electors. The question is now squarely presented, and must be decided.

It has been the custom of the legislature to provide by separate acts for (1) the issuance of debentures to be retired by appropriations from the state road fund; (2) the assessment and levy of excise and property tax, to be converted into the state road fund, and (3) the appropriation of money from the state road fund with which to retire these debentures.

The state legislature since an early date, has, by recurring acts, authorized the issuance of debentures by the State Highway Department, the proceeds of which were to be converted into the state road fund and used for building highways; and providing for their payment from the state road fund. The following are the latest of these laws: Ch. 93, N.M.L.1939; Ch. 12, N.M.L.1941; Ch. 85, N.M.L.1943; Ch. 29, N.M.L.1945; Ch. 35, N.M.L.1947. There are usually outstanding some eighteen or twenty million dollars of these debentures at all times, issued by authority of more than one of these recurring acts. As these debentures are redeemed new ones are issued. The following in the 1947 act appears literally or substantially in all.

"Section 1. The State Highway Commission of the State of New Mexico is hereby authorized to anticipate the proceeds of the collection of any or all of the gasoline excise taxes, motor vehicle registration fees and property and other taxes to the extent to which it is provided by law that the proceeds of the collection of such fees and taxes shall be covered into the State Road Fund and to the extent that the same are not otherwise pledged by the issuance and sale of bonds and debentures heretofore sold and now outstanding by the issuance and sale of state highway debentures in such amounts, not exceeding in the aggregate $6,000,000 at such time and bearing such rate of interest, not exceeding three per centum per annum, as said Commission may determine. * * *

"Section 2. The Treasurer of the State of New Mexico shall keep a correct record

of all such debentures issued and from the proceeds of the collection of the taxes and fees pledged to pay the same under the authority hereof he shall first set aside each month in a separate fund a sufficient amount to pay the interest accruing each month on said debentures, and during the twelve months next preceding the maturity of each series of such debentures he shall set aside from said proceeds sufficient money to provide for the payment of the principal thereof at maturity. * * *

"Section 5. The issue and sale of said debentures shall constitute an irrevocable contract between the State of New Mexico and the owner of any of said debentures that the fees and taxes pledged for the payment thereof, at the rate now provided by law, shall not be reduced so long as any of said debentures remain outstanding and unpaid and that the State will cause said taxes and fees to be promptly collected and sufficient thereof set aside and applied to pay said debentures and interest according to the terms thereof. * * *" Ch. 35, N.M. L.1947.

The following provisions are incorporated in all of the outstanding debentures issued under each of the acts which now has outstanding debentures issued thereunder: "On the first day of ——, 19—, the State of New Mexico will pay to the bearer the sum of $1000.00 with interest at the rate of Three Per Centum per annum, payable semi-annually, * * *

"But only from the proceeds of the collection of the excise taxes of Five (5) cents per gallon upon the sale or use of gasoline with the State of New Mexico, the motor vehicle registration fees *and property and other taxes* to the extent to which it is now provided by law that the proceeds of the collections of such fees and taxes shall be covered into the State Road Fund * * *." (Our emphasis.)

Many statutes have been passed since statehood providing for the assessment and levy of taxes on property, and excise taxes on petroleum products and other taxes, all to be converted into the State Road Fund. In 1937 the petroleum excise tax acts were revised and codified (Ch. 83, N.M.L.1937, and thereafter amended by Ch. 104, N.M.L.1939 and Ch. 180, N.M.L.1941; and again by the legislature of 1949, which is the act now under consideration. See Art. 12, N.M.Sts.1941.

Numerous laws appropriating funds for the payment of highway debentures out of the "State Road Fund" have been passed by the legislature, the last being Ch. 118, N.M.L.1947, from which we copy the following:

"Section 1. There is hereby appropriated for each of the thirty-fifth and thirty-sixth fiscal years the sum of Nineteen Million Dollars ($19,000,000.00), or so much thereof as may be necessary for the purpose of carrying out the provisions of

the laws relating to the issue, sale and payment of State Highway Debentures and the interest thereon; * * *

"Said appropriations shall be paid only out of the monies in the State Treasury to the credit of the State Road Fund and that may be placed to the credit of said fund, special road funds and funds from time to time set aside for the payment of the principal of and interest on State Highway Debentures and monies received and that may be received by the State Treasurer from allotments of appropriations by Congress for road construction or other purposes, from sales of State Highway Debentures, from special road tax levies and other monies provided by law to be expended under the direction of the State Highway Commission. * * *"

The original act, of which the act in question, Act of 1949, is an amendment, was passed by the legislature of 1937, Ch. 83, N.M.L.1937; Sec. 14 thereof has not been amended, Sec. 68-1214, N.M.Sts.1941, and is as follows: "The proceeds of all taxes and all distributors', wholesale dealers' and retail dealers' license taxes (together with penalties and interest collected thereon) less three per centum (3%) thereof, which shall be set aside by the state treasurer for the use of the bureau of revenue in administering this act, shall be credited to the state road fund to be used for maintenance, construction and improve-

ment of the public highways and to meet federal allotments under the federal aid road laws; Provided, that sufficient of said road fund shall be set aside each year by the state treasurer to pay the principal and interest coupons of highway debentures issued to anticipate the collection of said fees and taxes as the same mature."

The state road fund is made up of funds collected as provided in the act in question and other acts. The respondent asserts that it may be augmented by a general tax levy as provided by the following statute:

"In order to provide funds for carrying out the provisions of this act, and for the survey, location, construction and improvement of highways and bridges, there is hereby levied upon all taxable property in the state an annual tax of one and one-half (1½) mills upon the dollar, which tax shall be in lieu of the tax authorized by section 2642, New Mexico Statutes, Codification of 1915.

"It is hereby made the duty of the state auditor to cause such levy to be certified to the board of county commissioners of each county in the state each year, and said tax shall be extended upon the assessment rolls, assessed, and collected at the times and in the manner provided by law for the extension upon assessment rolls, assessment and collection of other state taxes; and the proceeds thereof shall be paid over by the several county treasurers,

without deduction of any percentage thereof to the state treasurer and covered into the state road fund. * * * Subject to the provisions of section 4579, New Mexico Statutes, Codification of 1915, after providing for interest and sinking fund upon state highway bonds authorized and issued in accordance with chapter 58 of the Session Laws of 1912 by setting aside sufficient funds therefor each year out of the proceeds of the said one (1) mill tax levy or out of moneys received from sales of certificates or debentures issued in anticipation thereof, it shall be the duty of the state treasurer to set aside from the moneys received from collection of the taxes and licenses pledged therefor sufficient funds to provide for the payment of the interest and principal of all certificates or debentures issued under the provisions of this act. * * *

"The tax levies herein provided for shall be excepted from the limitations of chapter 54 of the Session Laws of 1915." Sec. 58-243, N.M.Sts.1941.

This is the only law providing for the payment of highway debentures out of a general property tax.

The question in State Office Bldg. Commission v. Trujillo, 46 N.M. 29, 120 P.2d 434, 445, was whether debentures issued to pay for the construction of a state office building were "public debts," in the sense used in Sec. 8 of Art. 9 of the Constitution. These debentures were to be retired from rentals to be charged state officials and state boards for office space in the state office building it was proposed to be built with funds derived from the sale of debentures. The effect of the law was that some of the occupants would pay their rentals from the proceeds of general taxes levied for state purposes. The reasons for holding that the debentures involved in that case were "public debts" are applicable here. They are so fully and convincingly stated by the late district Judge Frenger who wrote the opinion of the court, that we need only copy the conclusions of the court and refer to that opinion for its reasoning. We stated as our conclusion: "* * * It is suggested in argument that the various agencies named in the Act, or some of them, will or do obtain moneys from excise taxes, fees, etc., out of which they could pay the rentals; but the Act does not direct or require that such rentals shall be paid from such sources. As we have pointed out, before a special fund scheme may prevail it is necessary that the sources for payment of the financial obligation be set out in the creation of the obligation in order to clearly disclose that no part of the obligation is to be paid or satisfied from general taxation. Absent such a showing in this case, it is inevitable that to pay off the rentals a resort to general taxation is or may be necessary; and, therefore, the

special fund doctrine cannot here obtain. This feature of the doctrine is well expressed under the quotation above set out taken from the case of Brash v. State Tuberculosis Board, supra, [124 Fla. 652, 169 So. 218, 219], which we requote to this extent: 'And, in the case of enterprises authorized by the Legislature to be embarked upon through state agencies, a particular scheme of financing will be held to be valid only where it is clearly demonstrable from the specific terms of the financing proposal itself that no tax burden or pecuniary liability of the state to appropriate or pay for the indebtedness about to be incurred will ever arise, or be looked to as security, in whole or in part, for repayment of the borrowed moneys.' "

According to that decision, and we reaffirm its doctrine, if any part of the funds used to pay these debentures will be, or may be, lawfully obtained from a general ad valorem tax levy on property in the state, they are "public debts" of the state in the sense these words are used in Sec. 8 of Art. 9 of the state Constitution.

If Sec. 58-243, N.M.Sts.1941, of which we have copied parts, is in force at this time, then the act in question is not subject to the referendum provision of Sec. 1 of Art. 4 of the State Constitution, because provision is made by it for their retirement out of a fund that may be partly obtained from a general property tax of one and one-half mills on the dollar, to be converted into the state road fund, out of which state highway debentures are paid.

But it is said that no tax has been levied as provided by Sec. 58-243, supra, since 1928, and therefore it is no longer operative. We have found nothing to indicate the act has been repealed, and the proceeds of the tax levy authorized by the act are pledged to the payment of each of these debentures. It is stated in each debenture that it is payable from a gasoline tax, motor vehicle registration fees, *and property* and other taxes "to the extent to which it is now provided by law that the proceeds of the collection of such fees and taxes shall be covered into the state road fund." This pledge is authorized by Secs. 58-244 and 58-245, N.M.Sts.1941, and Sec. 5 of Ch. 35, N.M.L.1947 and is appropriated by Ch. 118, N.M.L.1947 and other similar acts referred to and copied in this opinion.

Now the one and one-half mill levy provided by Sec. 58-243, Sts.1941 is the only property tax provided by law for the payment of highway debentures, and is included in the authorized pledge of payment contained in the face of the debentures. It is true that the levy as authorized and made has not been collected since 1928; no doubt because not needed. Nevertheless, any holder of debentures may enforce its collection if default is made in payments from other sources.

Territory ex rel. Parker v. City of Socorro, 12 N.M. 177, 76 P. 283; State ex rel. City of Roswell v. State Tax Comm., 34 N.M. 303, 280 P. 258; Barker v. State ex rel. Napoleon, 39 N.M. 434, 49 P.2d 246; State ex rel. Martin v. Harris, 45 N.M. 335, 115 P.2d 80.

■ It is suggested that Sec. 58-243, N.M.Sts.1941 applies only to the debentures issued under the provisions of that act, Act of 1919. It provides that the debentures issued under that act shall be paid from the road fund, but that fund is not limited to their payment. The state road fund is pledged to the payment of the debentures in question. That fund consists of the proceeds from taxes on petroleum products and other taxes, and a general ad valorem tax on taxable property in the state. The collection of this tax may be enforced exactly as the other taxes making up the state road fund could be enforced were they not collected.

The debentures in question are payable from a fund, the source of a part of which is a general ad valorem tax on the taxable property in the state. These highway debentures therefore are evidences of public debts in the sense the words "public debts" are used in Sec. 8 of Art. 9 of the State Constitution.

It follows that Ch. 42, N.M.L.1949 is a law excepted by Sec. 1 of Art. 4 of the State Constitution from those which the people are given the right by referendum to disapprove, suspend or annul.

The respondent argues persuasively that the State Highway Commission is an "institution," as the word is used in Sec. 1 of Art. 4 of the State Constitution, and because of this also, the law is exempted from the referendum provided thereby, and in support cite the following authorities: Detroit Auto Club v. Secretary of State, 230 Mich. 623, 203 N.W. 529; State ex rel. Blakeslee v. Clausen, 85 Wash. 260, 148 P. 28, Ann.Cas.1916B, 810; State ex rel. Anderson v. Howell, 106 Wash. 542, 181 P. 37; Winebrenner v. Salmon, 155 Md. 563, 142 A. 723.

The only authority to the contrary, cited by relator or found by our search, is State ex rel. Highway Comm., v. Thompson, 323 Mo. 742, 19 S.W.2d 642.

We will not decide that question, nor the third one argued, that is, whether the law in question provides for the public peace, health and safety, and for this reason is exempt from said referendum, in support of which respondent cites Hughes v. Cleveland, 47 N.M. 230, 141 P.2d 192.

The alternative writ is discharged and cause dismissed at relator's cost. It is so ordered.

LUJAN, SADLER, McGHEE and COMPTON, JJ., concur.