DUKE BOND vs. THE MAYOR AND CITY COUNCIL
OF BALTIMORE et al.

*Sessions of the City Council of Baltimore—Ordinance Intro-
duced During First Legislative Year May Be Passed
During Second Legislative Year.*

Members of the First Branch of the City Council of Baltimore
are elected for a term of two years, and members of the Sec-
ond Branch for four years. Section 216 of the City Charter
provides that the City Council shall meet on a certain day
of May in each year, and may continue in session for one
hundred and twenty days in each year, but may arrange to
hold their meetings continuously or otherwise. Section 221
provides that no ordinance shall become effective unless it
be read on three different days of the session in each Branch,
unless otherwise unanimously ordered. *Held,* that when an
ordinance is introduced in one Branch during the first legis-
lative year, and there read twice in that year, and read for
the second time in that Branch during the second legislative
year, and all the readings in the other Branch were during
the second legislative year, it is validly enacted, since the
Charter does not mean that the sessions of the Council in
each of the two years for which it was elected are so distinct
that at the end of the first year all unfinished business must
come to an end, or that the three readings of an ordinance
must be had during the same legislative year in both Branches.

*Decided per curiam June 30th, 1909. The following opin-
ion was filed October 7th, 1909.*

Appeal from the Circuit Court of Baltimore City (Heuis-
ler, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Eli Frank,* for the appellant.

*Edgar Allan Poe,* City Solicitor, and *Sylvan Hayes Lauchheimer,* Deputy City Solicitor, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore was authorized by Chapter 105 of the Acts of 1908, to issue the stock of the corporation, to an amount not exceeding one million dollars, to make extensions to the underground conduits and their appurtenances, provided an ordinance for that purpose was first submitted to the legal voters of the city and approved by a majority of the votes cast. An ordinance was passed which was so submitted and approved at an election held on November 3rd, 1908. Thereafter the Commissioners of Finance sold $250,000 of the stock, but the purchasers refused to accept it—alleging that the ordinance had not been passed in accordance with the provisions of the City Charter and that therefore the Commissioners of Finance were without authority to issue it.

The appellant filed a bill of complaint by which he sought to enjoin the Mayor and City Council of Baltimore and the Commissioners of Finance from consummating the sale, on the ground that the ordinance was not validly passed. An answer was filed, an agreed statement of facts entered into and the cause was heard by the Court below, resulting in a decree dismissing the bill, from which an appeal was taken to this Court and heard by us, by consent, after the regular docket of the April term had been completed. We then filed a *per curiam* order affirming the decree, and will now state our reasons more fully for the conclusion reached by us.

The real controversy arises on the meaning and proper construction of sections 216 and 221 of the City Charter. The

ordinance referred to was introduced and read for the first time in the First Branch of the City Council on May 12th, 1908. It was read again on May 18th, and for the third time on the 21st of that month. It was first read in the Second Branch on the 21st of May, then on the 25th and for the third time on the 27th of that month.

Sec. 216 provides that: "The City Council shall meet on the Thursday next after the third Monday in May, in the year eighteen hundred and ninety-nine, and upon the same day in each year thereafter, and may continue in session for one hundred and twenty days, and no longer in each year; *provided,* that they may, by ordinance or resolution, so arrange their sittings that the same may be held continuously or otherwise; and provided, further, that the Mayor may convene the City Council in extra session," etc.

Sec. 221 provides, amongst other things, that "no ordinance shall become effective until it be read on three different days of the session in each Branch, unless all the members elected to the Branch where such ordinance is pending shall so determine by yeas and nays, to be recorded on the Journal, and no ordinance shall be read a third time until it shall have been actually engrossed for a third reading."

It is clear that sec. 216, for some purpose, fixes a legislative year running from the Thursday next after the third Monday in May in one year to that Thursday of the next year. The contention of the appellant is that, inasmuch as this ordinance was introduced during the first legislative year, it was necessary that it be adopted before May 21st, 1908, the beginning of the second year, and, as one of the readings in the First Branch and all of them in the Second Branch were after the second year had begun, it was not validly enacted. He contends, in effect, that sec. 216 provided for two separate and distinct sessions of the City Council during the term of two years for which the members of the First Branch were elected, and that under sec. 221 the three readings of an ordinance were required to be during the same session, in both Branches.

The City Council which passed this ordinance met, in accordance with the charter, on May 23rd, 1907. That was the time for organization of the First Branch, and, as we understand from what is said in the record, it was organized for the two years for which its members were elected, being until May, 1909. The members of the Second Branch were elected for four years (four being elected every second year), and the President of that Branch was elected for four years by popular vote. There was no election of members of either Branch of the City Council in 1908. There was therefore no change in the personnel of the members of either Branch from May, 1907, to May, 1909, unless possibly there was some vacancy which was filled by the Branch in which it occurred. The first Thursday after the third Monday in May, 1908, was the 21st of that month. The Journals of the two Branches show that upon the organization in May, 1907, each Branch adjourned to a day certain, and thereafter upon each adjournment a day certain was fixed for the Branch to reconvene. There was no final adjournment before entering upon the second year, but the session in each year was treated as continuous during the term of the members.

The members of the City Council who met on the 21st day of May, 1908, were the same persons who were in office on the 12th and the 18th of that month, when this ordinance was read for the first and second times in the First Branch, and were the same on the 25th and 27th of May, when it was read the second and third times in the Second Branch. It would therefore seem to be impossible to give a valid reason for passing a statute which prohibited such members from continuing the consideration during the second year of an ordinance introduced and partly disposed of in the first year of their term, and unless the language of the charter admits of no other construction it should not be so construed. If, as was formerly the case, the members of one Branch were only elected for one year, another question would arise, as those for the next year might be entirely different persons from those who had originally acted.

Sec. 216. provides that they "may continue in session for one hundred and twenty days, and no longer, *in each year,*" but it does not prohibit them from continuing the consideration of business in the second year which was begun in the first, and only limits the number of days for sittings in any one year. It differs materially from the constitutional provisions applicable to the Legislature. They provide for the Legislature meeting on the first Monday of January every second year, and limit its sessions to ninety days from that time. While the members of the House are elected for two years a Legislature only has one session of ninety days before the end of its term unless called in extra session. But in sec. 216 there follows the clause last above quoted: "Provided, that they may, by ordinance or resolution, so arrange their sittings that the same may be held continuously or otherwise." They can regulate their meetings as they see proper, provided they do not exceed the one hundred and twenty days in each year, and may be in session the first day and the last day of the legislative year. It is not a continuous session of one hundred and twenty days, and the expression "may continue in session," etc., cannot properly be construed to mean that at the end of the one hundred and twenty days, or at the end of the year during which they meet that number of days, all the unfinished business must come to an end, and be gone over from the beginning, in order to give it effect. It would be a useless waste of time, and in the absence of some more definite indication of such intention by the Legislature than can be found in sec. 216 we cannot give it such a construction.

Nor should the terms used in sec. 221 be given such a narrow construction as the appellant contends for. It requires an ordinance to be read "on three different days of the session in each Branch." Such a provision was manifestly adopted to prevent hasty, ill-advised or improper legislation, and if the construction contended for be adopted it would have a tendency to cause the very thing sought to be avoided, as it might well result in hurrying an ordinance through in order

to have it passed before the end of the legislative year. It is begging the question to say that the expression "on three different days of the session in each Branch" shows that the readings must be during one legislative year. That assumes the very question now being considered—whether the charter did intend to divide the term of two years into two sessions for all purposes, and to so effectually draw the line between the two that an ordinance introduced in one cannot be finally adopted in the other.

We have already seen that there can be no valid reason for such limitation, as the personnel of the members is the same during the two years, and if there be no valid reason for a particular construction of language used in a statute which is susceptible of another construction, the former ought not to be given to it. The agreed statement shows that Roberts' Rules of Order governed the City Council, in the absence of some special rule of its own. That manual says: "A session is a meeting which, though it may last for days, is virtually one meeting—as, for instance, a session of Congress, which meets for months. The only way to terminate a session is to adjourn *sine die,* or without day. The intermediate adjournments from day to day do not destroy the continuity of the meeting—they, in reality, constitute one session. An adjournment to meet again at some other time terminates the meeting, but not the session. The next meeting, in such a case as the one last mentioned, would be an adjourned meeting of the same session."

The City Council did not at its last meeting of the legislative year for 1907–1908 adjourn *sine die,* but adjourned to May 21st, the first day of the second legislative year. While it will be conceded that the City Council could not change the statute, and hence if there were two sessions fixed by law, it could not convert the two into one by its mere method of adjournment, still its action, which is that which has been regularly adopted since the new charter went into effect, not only shows the construction of it given by the City Council, but the dangerous consequences that might ensue by giving

the language of the charter too narrow a meaning. Other important legislation has been passed by the City Council in the same way this ordinance was, and as, in order to sustain it, it is only necessary to construe the charter to mean that the session of the City Council extends from its organization at the beginning of the first legislative year to the end of the second legislative year, during which the same members remain in office, and especially as we can find no valid reason for the contrary, we adopt that construction.

. We would add, however, that if it be conceded that a new session began on May 21st, 1908, our conclusion would be the same, as it was but another session of the same members of the City Council. The Constitution of the United States provides that: "The Congress shall assemble at least once in every year, and such meeting shall be on the first Monday in December, unless they shall by law appoint a different day." As is well known, each Congress has two sessions. The members of the House are elected for two years, just as the members of the First Branch were at the time in question, and the members of the Senate are elected for six years, as the members of the Second Branch were elected for four years. But we are not aware that it has ever been denied that a bill can be introduced in the House of Representatives, for example, at its first session and finally passed by it and the Senate in the second session of that Congress. Precisely the same reason would apply to the one case as to the other—the same members sit in both sessions and merely because there are two meetings, or sessions, if that term be preferred, there can be no valid reason given for prohibiting those members from continuing in the second session the consideration of a proposed law introduced in the first. On the contrary, there are excellent reasons why it should be allowed, of which we need only mention that it avoids the useless repetition of work already done, and the fact that it is likely to enable them to give the bill better consideration.

It is said, however, by the appellant that there is no provision in the Federal law of such effect as that in sec. 221 of

the charter, but that can only be said to be material if the expression "be read on three different days of the session in each Branch" be construed to mean *the same session*. The manifest object of that provision was to require the reading of an ordinance on three different days before it could be passed by either Branch, and if the Legislature intended that all pending legislation must become inoperative at the end of the first year, and be begun again, it should and doubtless would have said so in plain terms. According to the appellant's contention, there were to be two sessions of the City Council—the one beginning in this instance in May, 1907, and the other in May, 1908—and if sec. 221 had intended that the three different days must be confined to one of the two it would have said "of the same session," or "of the session in which it was introduced," or something of like effect.

So, if we adopted the theory of two sessions presented by the appellant, we would have no difficulty in holding that the charter does not so separate the two as to prevent the consideration of an ordinance during the second session, which was introduced and partially acted on in the first. At best it is an exceedingly technical point, especially as the affirmative vote of the legal voters of the city was necessary to give the ordinance effect, although of course if it was not validly passed it could not have been legally submitted, and hence there can be no just criticism of the purchasers or the appellant for having the question determined.

It becomes unnecessary to further discuss the meaning of the word "session." We would only add that it largely depends upon the connection in which it is used, and may mean one thing in one section or paragraph of a law and something else in another. It is obviously used in different ways in different parts of this charter.

*Decree affirmed, as heretofore ordered.*