## THOMAS, Administratrix *v.* POLICE COMMIS-SIONER OF BALTIMORE CITY

[No. 39, October Term, 1956.]

*Decided December 7, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Charlotte W. Main* and *Hugh J. Monaghan, II,* for the appellant.

*Alexander Harvey, II, Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from an order sustaining a demurrer by the Police Commissioner of Baltimore, without leave to amend, in an action for *mandamus* by the widow of a policeman, as his administratrix, to compel the refund of contributions the husband had made to the police pension fund. The case turns on whether the policeman died before or after the right to receive the refund, newly created by legislative act, had become vested.

Chap. 266 of the Acts of 1900 in order to provide, among others, a new source of revenue for the so-called Special Fund for retirement benefits for Baltimore policemen, which had been created in 1886, required every member of the force, who elected to become a member, to contribute 2% of his salary to the fund. It is conceded that the fund has never been and is not now actuarially sound and that the City budgets and makes available to the fund all monies needed in its operation not otherwise available. From its inception, there have been provisions in the law governing the fund for payments to the widow of a policeman killed in, or as the result of, the performance of duty. There was no provision for the refund of contributions of a policeman who for any reason ceased to be such, or for refund to the estate of a policeman who died of natural causes while on the force, as did James F. Thomas, the husband of the appellant. The Attorney General in 20 Op. A. G. 632 (1935), and 24 Op. A. G. 637 (1939), ruled that a policeman leaving the force for any reason other than retirement could not get back his contributions to the fund.

In 1951 the Legislature for the first time provided a refund to one who left the force. Chap. 502 of the Acts of 1951 added a new section to the Public Local Law governing the

fund, which reads as follows: "593A. Beginning on January 1, 1952, any officer or employee of the said Police Department who is a member of the said Special Fund and who for any reason ceases to be such an officer or employee shall forthwith be paid by the Police Commissioner a sum of money equal to that paid into the said Fund by the said officer or employee during the time he served as such."

In 1953 the Legislature added a second sentence to sec. 593A, which it had enacted two years before. Chap. 660 of the Acts of 1953 provided in sec. 1: *"Beginning on January 1, 1954, the Police Commissioner shall pay to the personal representative of any deceased officer or employee of the Police Department who was a member of the said Special Fund and who, because of death, ceased to be such officer or employee, a sum of money equal to that paid into the said Fund by the said officer or employee* TO MAINTAIN ELIGIBILITY FOR HIS RETIREMENT *during the time he served as such."*

In sec. 2 the Legislature said "* * * this Act shall take effect June 1, 1953." James F. Thomas, the husband of the claimant, died on September 27, 1953, while a member in good standing of the police force of Baltimore and of its Special Fund. He had contributed $1,268.42 to the fund, which appellant seeks to reclaim from the Police Commissioner who, under the statute, is trustee of the fund. It is agreed that Thomas was not killed in, or as a result of, the performance of duty. The appellant's first contention is that since her husband died after June 1, 1953, the effective date of the Act of 1953, his estate became entitled at the moment of his death to the refund, although, under the terms of the Act, payment was to be made only after January 1, 1954. Her second contention is that if she is not entitled to prevail under the Act of 1953, then the terms of the 1951 Act are broad enough to cover separation from the force by death—that the 1953 Act was merely declaratory of pre-existing rights and created no new right.

The trial judge ruled against appellant on both contentions. He decided that the provision in the body of the Act that refund should be made beginning "January 1, 1954" was a legis-

lative mandate so clear and unequivocal that the "customary effective date of June 1st must be treated as surplusage."

We find no need to consider appellant's second contention since we think the Act of 1953 gives her the right to the refund she seeks.

It is a hornbook rule of statutory construction that, in ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible. *Bickel v. Nice,* 173 Md. 1, 6; *Baltimore v. Deegan,* 163 Md. 234, 238; *Pittman v. Housing Authority,* 180 Md. 457, 463; *Maguire v. State,* 192 Md. 615, 623; *Frazier v. Warfield,* 13 Md. 279, 301. A corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory. This was stated negatively in *Pressman v. State Tax Commission,* 204 Md. 78, where it was noted that words in a statute may be rejected as surplusage if they are incapable of any sensible meaning or are repugnant to the rest of the statute and tend to nullify it.

It is clear that the provision as to the effective date of an act is an integral part of the act. Constitution of Maryland, Art. 3, Sec. 31, provides that "No law passed by the General Assembly shall take effect until the first day of June next after the session at which it may be passed, unless it be otherwise expressly declared therein." In 1915 there was added a provision, as part of the referendum amendment in Art. 16 of the Constitution that "No law enacted by the General Assembly shall take effect until the first day of June next after the session at which it may be passed, unless it contains a Section declaring such law an emergency law * * *." After the adoption of the referendum amendment, the question arose as to whether there was any conflict between the two provisions of the Constitution. *Beall v. State,* 131 Md. 669, held that Art. 16 did not supersede Sec. 31 of Art. 3 of the Constitution. Attorney General Ritchie suggested in 1 Op. A. G. 286 that it would be wise to add a section stating that "This Act shall take effect from the first day of June, 1916" to all bills en-

acting laws not permitted by the Constitution, unless expressly stated otherwise, to take effect before June first. Since the opinion of Attorney General Ritchie, it has been customary for the Legislature to make such provision as to most of the laws it passes. It may, however, provide for an earlier or a later date if it expressly so states in the act and many times the Legislature has provided that an act shall take effect on a date other than June first. One such act is Chap. 784 of the Acts of 1941, which provided for an increased leave of absence with pay for members of the police force. The second section of the Act provided: *"And be it further enacted,* That this Act shall take effect January 1, 1942." See, for a general discussion of the matter, *Everstine, The Legislative Process in Maryland,* 10 Md. L. R. 91, 131. The fact that the Legislature may make an act effective earlier or later than June first, or may provide that it shall be effective on June first, suggests that the effective date must be an integral part of the act and this Court has so held. See *Culp v. Chestertown,* 154 Md. 620, 622. There one section of an Act providing for a bond issue declared it to be an emergency measure. The Court held this was surplusage and should be rejected, "* * * leaving intact that portion of section 7 of the act which declares that the same shall take effect from the date of its passage." See also *Robey v. Broersma,* 181 Md. 325, 344, and *Strange v. Levy,* 134 Md. 645.

The Act of 1953 showed a clear legislative intent that the estate of a policeman who had died while a member of the force should receive the contributions he had made to the Special Fund. The Legislature, in so many words, said that this intent should be put into effect on June 1, 1953. No reason has occurred to us, nor has any been suggested, why the Legislature should have meant that a policeman who died after May thirty-first and who was otherwise within the terms of the Act, should be deprived of its benefits. The parties were in agreement at the argument that the fiscal year of the City of Baltimore is the calendar year. It was suggested by the appellee that the Legislature postponed the operation of the act because the additional money required by the execution of its provisions could not be received by, or be available

to, the Commissioner earlier than January 1, 1954. The argument advanced was that the Commissioner could estimate the number of policemen likely to die in the ensuing year and could request sufficient money in the budget of Baltimore City to make the refunds needed. We see no reason why the Legislature should have contemplated that only those who were to die in the succeeding fiscal year should be provided for but not those who had died in the seven months that followed the effective date of the Act and preceded the next fiscal year. The Commissioner could advise the fiscal officers of Baltimore of the money required to pay the estates of those who died before January first more precisely than he could estimate the amount that would be needed in the next year, beginning January first. We think that the legislative policy to grant the refunds and the statement that its policy should take effect on June first can be gratified. We read the statute to mean that the right to the refund became vested in the estate of a policeman dying after May thirty-first upon his death, and that payment only was deferred until January first. Such a reading takes into account all parts of the statute and gives effect to the literal language of the statute that: "Beginning on January 1, 1954, the Police Commissioner shall pay to the personal representative of any deceased officer * * * who *was* a member of the said Special Fund and who, because of death, *ceased* to be such officer * * *." (Italics supplied) The past tense used as to the status of the police official in relation to January first takes in police officers who died on or after June first and before January first. We see no reason to read the act as the appellee asks us to read it. As the Court said in *Bond v. Baltimore City,* 111 Md. 364, 369: "* * * if there be no valid reason for a particular construction of language used in a statute which is susceptible of another construction, the former ought not to be given to it."

Two District Courts of Appeal in California, in construing similar acts, reached the conclusion we have reached. In *Ross v. Board of Retirement,* 206 P. 2d 903, 907, the Board of Supervisors of Alameda County accepted the provisions of a general retirement law by the passage of an ordinance on October 21, 1947. One section of the ordinance provided that

the retirement law "shall become operative" on January 1, 1948, and another section provided that "This Ordinance shall take effect thirty days from and after the date of its passage." The petitioner in the case sought a *mandamus* to determine that he was a member of the retirement system. He had complied with all of the requisites of the ordinance after November 20, 1947, that is to say, thirty days after its passage. Certain legislative conditions made his rights turn on whether he could do this before January first. The court said: "At least on and after November 20, 1947, the date the ordinance became effective, it was part of every eligible officer or employee's contract that starting on January 1, 1948 he would be entitled to certain retirement benefits. However, the operative date is merely a date of convenience to the officers in charge of the retirement system for bookkeeping, retirement or other reasons. Otherwise the operative date is a false factor—the key or controlling date is the 'effective' date. From the effective date the retirement right became an integral portion of contemplated compensation. The *right* to future retirement vested on the date of the effectiveness of the ordinance." There was a similar holding in *Thurston v. Los Angeles County,* 256 P. 2d 588.

For the reasons given, it is our view that the order below must be reversed.

> *Order reversed, with costs, and case remanded for further proceedings in conformity with this opinion.*

HENDERSON, J., delivered the following dissenting opinion.

That the administratrix in this case is entitled to a refund is not an earth-shaking determination, but I cannot agree with the majority of the Court in its construction of the statute. Refunds are generally held to be matters of grace with the legislature and statutes conferring such rights are strictly construed. *Wasena Housing Corp. v. Levay,* 188 Md. 383, 389, and cases cited. This rule would seem to be peculiarly applicable in the case of a pension fund that is only partly contributory.

The history of this pension legislation is one of gradual liberalization, and the form of the Act of 1953 was undoubtedly influenced by the prior Act of 1951. In that Act the phrase "beginning on January 1, 1952" seems to me to have reference to the inception of the right rather than the time of payment. Payment is directed to be made "forthwith", and the words "is a member" and "ceases to be such an officer or employee" naturally and grammatically refer to the date of "beginning". I think this was the pattern and intent in the Act of 1953, despite the use of the words "was" and "ceased" in the past tense. Both fairly relate to the date fixed in the body of the Act.

The fact that the Act contains the stock enacting clause declaring the effective date to be June 1, is not very significant because the practice of including it arose out of a suggestion of Attorney General Ritchie based on the adoption of the Referendum Amendment, Art. 16 of the Constitution. This provides in effect for a stay of operation upon the filing of a petition against certain Acts, if they are not passed as emergency measures. Art. 3, sec. 31 of the Constitution theretofore provided, and still provides, that no law shall take effect until June 1 "unless it be otherwise expressly declared therein". If no date is fixed, an Act becomes effective on June 1. *Parkinson v. State,* 14 Md. 184. In *Robey v. Broersma,* 181 Md. 325, 346, it was held that even where an effective date was specified, an Act did not take effect until signed by the Governor. I find no suggestion in the constitutional provisions. or in the practice under them, that an Act must become operative on its effective date, although after June 1 it is no longer open to referendum. Where a later date is indicated in the body of the Act, it should have controlling weight.

This view finds support in the Maryland cases. In *Drug & Chem. Co. v. Claypoole,* 165 Md. 250, the Act contained the usual enacting clause declaring the effective date to be June 1. But the Court held that it was not the legislative intention to impose additional license fees until the beginning of the next license year on May 1, and that the law did not become operative until the later date. In *State v. Kennerly,* 204 Md. 412, 418, it was held that an Act declared to take

effect on June 1, increasing the amount of oyster shells to be turned over to the State, did not operate as a repeal of the pre-existing law, where it was shown by intrinsic evidence in the Act that it was intended to become operative at the beginning of the next license year.

In the instant case the fact that funds would not be available until January 1, 1954, would seem to be a probable explanation of a choice of that date as the one on which the Act should go into operation. It is a general rule of construction that laws are intended to apply prospectively. It is true that it would be within the legislative power to impose financial obligations upon the City for the payment of which funds had not yet been budgeted or appropriated, but if that had been the intention it would have been unnecessary to specify a date of payment. Thus, the construction adopted virtually reads out of the Act the beginning date, in favor of a catchall clause not in the body of the Act.

I have no doubt that the Act of 1953 created a new right that was not within the scope of the Act of 1951. For the reasons stated I think the rulings of the trial court should be affirmed.