## HOLY CROSS HOSPITAL OF SILVER SPRING, INCORPORATED ET AL. v. HEALTH SERVICES COST REVIEW COMMISSION

[No. 8, September Term, 1978.]

*Decided November 6, 1978.*

678

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ., and H. KEMP MACDANIEL, Associate Judge of the Court of Special Appeals, specially assigned.

*Richard C. Shadyac*, with whom were *Metzger, Shadyac & Schwarz* on the brief, for appellant Edward D. Soma. *C. Michael Loftus*, with whom were *Slover & Loftus* on the brief, for appellant Robert E. McCullough. Submitted on brief by *Stanley J. Nadonley* and *John Burgess Walsh, Jr.,* for appellant Holy Cross Hospital of Silver Spring, Incorporated.

*Amicus curiae* brief filed by Maryland Radiological Society, Inc., *Melvin J. Sykes, M. Peter Moser* and *Jeffrey A. Wyand* on the brief.

*Amicus curiae* brief filed by Medical and Chirurgical Faculty of Maryland, *John F. King, Richard Bloch, Frederick G. Savage* and *Anderson, Coe & King* on the brief.

*Amicus curiae* brief filed by Harold W. Draper et al., *Glenn M. Cooper* and *Shefferman, Paley & Rothman, Chartered* on the brief.

*Amicus curiae* brief filed by Members of the Medical Staff of Holy Cross Hospital of Silver Spring, Inc., *William M. Canby, Joseph V. Truhe, Jr.,* and *Miller, Miller & Canby* on the brief.

*Amicus curiae* brief filed by The Maryland Society of Pathologists, Incorporated, *George T. Tyler* on the brief.

*Jay E. Levy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Stanley Lustman, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We are here involved as a matter of statutory construction with the question of whether fees charged by physicians in certain medical specialities to hospital patients, which fees are placed on hospital accounts and billed by the hospitals in such amounts to the patients, constitute a part of "the total costs of the hospital" so as to be considered as "reasonably related to the total services offered by the hospital" and thus whether the Maryland Health Services Cost Review Commission (the Commission) is empowered to review and set charges by these physicians in the specialities of cardiology, pathology, and radiology.

The Commission was created by Chapter 627 of the Acts of 1971. Certain revisions have been made since that date. See Maryland Code (1957, 1971 Repl. Vol., 1978 Cum. Supp.) Art.

43, §§ 568H-568Z. Matters involving the Commission were before us previously in *Health Serv. Cost v. Franklin Sq.*, 280 Md. 233, 372 A. 2d 1051 (1977), and *Blue Cross v. Franklin Sq. Hosp.*, 277 Md. 93, 352 A. 2d 798 (1976). Neither case involved the issue presented here.

The Commission held public hearings relative to Holy Cross Hospital of Silver Spring, Incorporated (the Hospital), one of the appellants. On December 1, 1976, it issued a proposed opinion and order which stated in pertinent part:

> "Section 568M(2), Article 43 of the Annotated Code of Maryland indicates that the Commission has the authority to 'hold public hearings, conduct investigations, and require the filing of information relating to any matter affecting the cost of services in all institutions subject to provisions of this sub-title ....' [1] It is clear that the provision of radiology and pathology is a service of Holy Cross Hospital. Based on this observation it is the Commission's belief that the legislative intent of the Commission's Enabling Act was that the Commission concern itself with all costs associated with the services rendered to patients in the hospital.[2] The Commission, therefore, finds that the salaries of the radiologists, pathologists and cardiologists are subject to their review as a part of their legislative charge to assure the public that total costs are reasonably related to total services provided."

---

1. Maryland Code (1957, 1971 Repl. Vol., 1978 Cum. Supp.) Art. 43, § 568M (3) imposes a limitation on the general powers of the Commission by stating it has the power to "[e]xercise, subject to the limitations and restrictions herein imposed, all other powers which are reasonably necessary or essential to carry out the expressed objects and purposes of this subtitle."

2. In this instance, as we shall later point out, the General Assembly was very careful to spell out its legislative intent in § 568H. Unless the terms used in the statute have a special meaning within the health care field different from their general meaning, we do not perceive the legislative intent as enunciated by the General Assembly as going as far as the Commission thinks it goes.

The Commission's final opinion and order, reaffirming its proposed opinion and order, was filed on February 2, 1977. It established new rates effective March 1, 1977, which included that which might be charged for radiology, pathology, and cardiology. That opinion stated in pertinent part:

> "The Hospital argued that the Commission was wrong in referring to the present compensation of the hospital based physicians as a salary. Since a salary refers to a fixed payment and the physician's compensation varies with the number and variety of tests performed, the Commission did indeed err in its choice of word. Further, the Commission's proposed Order also based the aggregate charges to the public for those services upon the relative value units of service provided. We, therefore, modify the proposed Opinion to read 'compensation' rather than 'salary' and otherwise confirm that as our Opinion supplemented by this document."

The Hospital sought judicial review in the Circuit Court for Montgomery County pursuant to Code (1957, 1978 Repl. Vol.) Art. 41, § 255, a part of the Administrative Procedure Act. Drs. Robert E. McCullough and Edward D. Soma (the doctors or the physicians), who appear as appellants here, were each granted leave to intervene in the circuit court. Their specialities are pathology and radiology, respectively. The circuit court reversed the order of the Commission and remanded the matter to it for further proceedings. However, the Hospital and the physicians appealed to the Court of Special Appeals since on the issue here under consideration the opinion and order were adverse to them. We granted the writ of certiorari prior to consideration of the case by that court.

The doctors are members of the medical staff of the Hospital, just as numerous other physicians are members of such staff being assigned to the appropriate clinical department such as general medicine, surgery and the like, according to their respective specialities. For a number of

years physicians in their categories conducted their own billing and collection operations, completely independent of the Hospital. This procedure was changed in 1972. At the times pertinent to this proceeding each of the physicians had a contract with the Hospital by which it was to supply him with suitable space and certain equipment and supplies. Each of them was to act as the director of his respective department in the Hospital and to provide services to patients within those specialities. The Hospital director testified that the prior separate billing system resulted in numerous complaints from patients who, after paying the Hospital's bill, were chagrined to receive yet another bill from a physician who had performed a special service. As a result, the system was changed so that the Hospital billed for those specialities.[3] Each month the Hospital remits to the respective physicians an amount equal to the gross billings on their behalf for the previous month, less 15% "retain[ed] to compensate it for bad debts and as reimbursement for the cost of administering" the contracts with the physicians. Each of the physicians is obligated to provide services without charge to any individual "determine[d] to be medically indigent, non-pay or part-pay . . . ."

The Commission's powers relative to the controversy here before us are found in § 568U which provides in pertinent part:

"(a) From and after July 1, 1974, the Commission shall have the power to initiate such reviews or investigations as may be necessary to assure all purchasers of health care hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital, [and] that the hospital's aggregate rates are reasonably related to the hospital's aggregate costs . . . .

"(b) In order to properly discharge these obligations, the Commission shall have full power to

---

3. We are advised that subsequent to the Commission's order the Hospital and physicians returned to the previous procedure by which the billing and collection operations of the physicians are totally independent of the Hospital.

review and approve the reasonableness of rates established or requested by any hospital subject to the provisions of this subtitle. No hospital shall charge for services at a rate other than those established in accordance with the procedures established hereunder."

A number of contentions are made to us by the Hospital and the physicians as to why the Commission may not do that which it here seeks to do. We shall focus, however, only on the question of whether the charges by these specialists are a part of "the total costs of the hospital," since if they are not there is no need to consider the other objections.

The bases for review of a proceeding such as this are set forth in Code (1957, 1978 Repl. Vol.) Art. 41, § 255 (f) and were discussed for the Court by Judge Horney in *Bernstein v. Real Estate Comm.,* 221 Md. 221, 230-31, 156 A. 2d 657 (1959), *appeal dismissed,* 363 U. S. 419 (1960). As was pointed out in that case, courts are not permitted to substitute their judgment for the expertise of those persons who constitute the administrative agency from which the appeal was taken. *See also* Chief Judge Murphy's opinion for the Court in *Zeitschel v. Board of Education,* 274 Md. 69, 82, 332 A. 2d 906 (1975). As Judge Singley observed for the Court in *Oxon Hill Rec. Club v. Water Res. Adm.,* 281 Md. 110, 113, 375 A. 2d 567 (1977), our review of the action of an administrative agency "is almost always limited to whether there was illegality, arbitrariness or unreasonableness in the action which was taken [citing cases]."

It is elementary that since an administrative agency, such as the Commission, is a creature of statute, it has no inherent powers and its authority thus does not reach beyond the warrant provided it by statute. *Gutwein v. Easton Publishing Co.,* 272 Md. 563, 575-77, 325 A. 2d 740 (1974), holding that the statute creating the Maryland Human Relations Commission did not grant the Commission power to make monetary awards for compensatory or other damages; *Albert v. Pub. Serv. Comm.,* 209 Md. 27, 34, 120 A. 2d 346 (1956), and *Utilities Co. v. Public Service Co.,* 154 Md. 445, 453, 140 A. 840 (1928).

The rules for statutory construction were set forth by Judge Levine for the Court in *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A. 2d 82 (1977):

> "As we have so often said, the cardinal rule of construction of a statute is to ascertain and carry out the real intention of the Legislature. *State v. Fabritz,* 276 Md. 416, 421, 348 A. 2d 275 (1975); *Fairchild v. Maritime Air Serv.,* 274 Md. 181, 185, 333 A. 2d 313 (1975); *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 65, 327 A. 2d 483 (1974). The primary source from which we glean this intention is the language of the statute itself. *State v. Fabritz,* 276 Md. at 421. And in construing a statute we accord the words their ordinary and natural signification. *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169, 338 A. 2d 248 (1975); *Md.-Nat'l Cap. P. & P. v. Rockville,* 272 Md. 550, 556, 325 A. 2d 748 (1974); *Grosvenor v. Supervisor of Assess.,* 271 Md. 232, 237-38, 315 A. 2d 758 (1974). If reasonably possible, a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless. *Prince George's Co. v. White,* 275 Md. 314, 319, 340 A. 2d 236 (1975). Similarly, wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences. *Fairchild v. Maritime Air Serv.,* 274 Md. at 186. Moreover, if the statute is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature. *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 403, 365 A. 2d 279 (1976); *Thomas v. State,* 277 Md. 314, 317, 353 A. 2d 256 (1976); *County Council v. Supervisor,* 274 Md. 116, 120, 332 A. 2d 897 (1975)." *Id.* at 360-61.

For statements to the same effect see the opinion by Judge Cole for the Court in *Gietka v. County Executive,* 283 Md. 24, 27, 387 A. 2d 291 (1978); *Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A. 2d 347 (1977), where Judge Orth listed a host of cases on this subject for the Court, and *Thomas v. Police*

*Commissioner,* 211 Md. 357, 127 A. 2d 625 (1956), where Judge Hammond made a succinct statement for the Court relative to the principles of statutory construction. In *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A. 2d 817 (1976), citing *Patapsco Trailer v. Eastern Freightways,* 271 Md. 558, 563-64, 318 A. 2d 817 (1974), and *Giant of Maryland v. State's Attorney,* 267 Md. 501, 512, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973), we stated, "A court may not insert or omit words to make a statute express an intention not evidenced in its original form." *See also Amalgamated Ins. v. Helms,* 239 Md. 529, 534, 212 A. 2d 311 (1965), where Chief Judge Prescott said for the Court, "[C]onstruing a statute liberally and adding to it, by judicial fiat, a provision which the Legislature did not see fit to include are not one and the same thing."

In the matter of statutory construction it is well understood that the view taken of a statute by administrative officials soon after its passage is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reasons. *F. & M. Schaefer v. Comptroller,* 255 Md. 211, 218, 257 A. 2d 416 (1969), citing *Smith v. Higinbothom,* 187 Md. 115, 132-33, 48 A. 2d 754 (1946), and *John McShain, Inc. v. Comptroller,* 202 Md. 68, 73, 95 A. 2d 473 (1953). However, as Judge Delaplaine said for the Court in *Rogan v. Baltimore & O.R.R.,* 188 Md. 44, 58, 52 A. 2d 261 (1947), "[W]here the language is plain and unambiguous, the judicial construction cannot be controlled by extraneous considerations. No custom, however venerable, can nullify the plain meaning and purpose of a statute." *Schaefer* could be cited for the latter proposition because we there held, 255 Md. 219, despite the prior construction by the Comptroller, that his "rule as [t]here sought to be applied [was] an invalid attempt to render taxable that which the General Assembly ha[d] precisely defined as not taxable." Even if sufficient time had passed since enactment of the statute here under consideration for administrative interpretation of it to be regarded as long-standing, *cf. Department v. Greyhound,* 247 Md. 662, 669, 234 A. 2d 255 (1967), no such interpretation exists here

because the Commission has reversed its position. For a number of years after the Commission was created it thought it did not have the power which it now contends that it does have.

Long ago Chief Judge Buchanan said for our predecessors in *Chesapeake and Ohio Canal Co. v. Baltimore & O.R.R.,* 4 G. & J. 1 (1832):

> "Statutes should be construed with a view to the original intent and meaning of the makers, and such construction should be put upon them, as best to answer that intention, which may be collected from the cause or necessity of making the Act, or from foreign circumstances; and when discovered, ought to be followed, although such construction may seem to be contrary to the letter of the statute. *Plow.* 205, 232; 11*th Coke Rep.* 73; 19*th Vin. Abr.* 519; 6*th Bac. Abr.* 384." *Id.* at 152.

We have continued to adhere to that view. *See, e.g., State v. Fabritz,* 276 Md. 416, 422, 348 A. 2d 275 (1975); *Height v. State,* 225 Md. 251, 257, 170 A. 2d 212 (1961); *Barnes v. State,* 186 Md. 287, 291, 47 A. 2d 50 (1946); and *Frazier v. Warfield,* 13 Md. 279, 301 (1859). In *Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 329 A. 2d 702 (1974), in construing the constitutional provision requiring judges to "be selected from those who have been admitted to practice law in this State" as applied to judges of the orphans' courts, we examined not only the proceedings of the Constitutional Convention of 1867 but texts written shortly thereafter and the long standing interpretation placed upon those constitutional provisions by various eminent members of the bar of this State.

In reaching our conclusion here we immediately cast aside the contention of the Commission that the provisions of § 568M (2) granting it authority to "[h]old public hearings, conduct investigations and require the filing of information relating to any matter affecting the cost of services in all institutions subject to the provisions of [that] subtitle and to subpoena witnesses, papers, records and documents in connection therewith" in some manner grants the authority

here sought to be applied. There is a lot of difference between the power to bring before the Commission papers and information relating to costs and the power to mandate that which is here sought to be mandated. Section 568M (2) must be read with § 568M (3) and the remainder of the subtitle. As we have already pointed out in n. 1, § 568M (3) imposes a limitation on the general powers of the Commission by stating that those powers are "subject to the limitations and restrictions" thereafter imposed in the subtitle. Reading the parts of the statute together and harmonizing its provisions, as we are mandated by our cases to do, we are of the view that the Commission has only such powers as to the establishment of rates as are granted to it under § 568U.

The General Assembly was careful to spell out its legislative intent when it created the Commission. Section 568H states in pertinent part:

> "In creating the Health Services Cost Review Commission, the intent of the Maryland General Assembly shall be as follows:
>
> "(1) The purpose of this subtitle is to create a commission which will beginning July 1, 1971, cause the public disclosure of the financial position of all hospitals ... and the verified total costs actually incurred by each such institution in rendering health services ... and which after the expiration of three or four additional years, as hereinafter set forth, will also review and certify as to the reasonableness of the rates established by these institutions. ...
>
> "(2) From and after July 1, 1974, an additional responsibility of this Commission is to assure all purchasers of health care hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital [and] that the hospital's aggregate rates are set in reasonable relationship to the hospital's aggregate costs ...."

The key words there are "verified total costs ... incurred ... in rendering health services" and "total costs of the hospital

... reasonably related to the total services offered by the hospital . . . ." Thus, the powers of the Commission spelled out in § 568U "to initiate such reviews . . . as may be necessary to assure all purchasers of health care hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital" are consistent with that set forth in the legislative intent. Accordingly, in order for the Commission to have the power to set the charges of the physicians with which we are here concerned it must be found that those charges constitute a part of "the total costs of the hospital." This term is no more restrictive than the specified legislative intent of "verif[ying] total costs actually incurred by each such institution in rendering health services" with the expressed desire that the Commission "assure all purchasers of health care hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital [and] that the hospital's aggregate rates are set in reasonable relationship to the hospital's aggregate costs . . . ." Therefore, for the Commission to have the power it seeks it must be determined that the charges of these physicians constitute a part of "the total costs of the hospital . . . ."

Webster's New International Dictionary of the English Language (2d ed. unabridged 1959) says of the term "cost" used as a noun:

> "1. The amount or equivalent paid, or given, or charged, or engaged to be paid or given for anything bought or taken in barter or for service rendered; charge; price; hence, whatever, as labor, self-denial, suffering, etc., is requisite to secure benefit.
>
> "At less *cost* of life than is often expended in a skirmish, [Charles V] saved Europe from invasion. *Prescott.*
>
> "2. . . .
>
> "3. The expenditure or outlay of money, time, labor, or the like; as, to spare no *cost*; to live *cost* free." (Emphasis in original.)

"Of" is a preposition. As used here Webster says of it:

> "**17.** Indicating the possessive relationship, otherwise expressed by the possessive case; belonging or pertaining to, or connected with (a place, time, person, or thing); as, the right *of* the possessor; the gate *of* heaven; the mistletoe *of* Europe; in the days *of* Herod; the genius *of* the language; the cube *of* a number. See Possessive, *adj.*" (Emphasis in original.)

Thus, "total costs of the hospital" means the Hospital's expenditures or outlays of money in connection with the operation of the Hospital.

Some expenses of a patient's hospital stay traditionally have been included in the bill submitted to the patient by a hospital. For that reason, these expenses would come within the term "total costs of the hospital" as those words are commonly understood, even if there were to be an attempt on the part of any hospital to enter into an independent contract for those services to be supplied through such hospital to its patients. For instance, it is known that some hospitals today contract with independent catering firms to supply meal services to hospital patients. We do not think for one instant that it would be possible to remove meal costs from "total costs of the hospital" so that hospitals might bill patients separately for meals, based upon charges to them of the caterer, and thus to remove such costs from the control of the Commission. However, on the record before us we are unable to agree with the conclusion of the trial judge or the conclusion of the Commission that the fees charged by these pathologists, radiologists, and cardiologists are a part of the "costs of the hospital," the term being used here in the sense of cost of operation of a hospital. On the other hand, we do not rule out the possibility that at the time of the enactment of this statute the words "total costs of the hospital" might have been a term "of art" in the health care field having a well understood meaning different from its common signification which would include the fees of the physicians here. Therefore, we think that the cause of justice

would be best served by a remand of this case to the Circuit Court for Montgomery County under Maryland Rule 871 without affirmance or reversal for further proceedings in which the Commission would be afforded an opportunity to present evidence of such an understanding of the meaning of the term within the field of health care at the time this statute was enacted, if such testimony in fact is available. In order that there may be no misunderstanding, we point out that if the services here under consideration were not understood in the health care field as embraced within "total costs of the hospital" at the time of the enactment of this statute, the Commission has exceeded the power vested in it by the General Assembly.

*Remanded without affirmance or reversal for further proceedings consistent with this opinion; costs to abide the result.*