296 Md. 17 (1983)
459 A.2d 192
HEALTH SERVICES COST REVIEW COMMISSION
v.
HARFORD MEMORIAL HOSPITAL
[No. 65, September Term, 1982.]
Court of Appeals of Maryland.
Decided April 25, 1983.
The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.
Jay E. Levy, Assistant Attorney General, with whom were *18 Stephen H. Sachs, Attorney General, and Stanley Lustman, Assistant Attorney General, on the brief, for appellant.
N. Natalie McSherry, with whom were Whiteford, Taylor, Preston, Trimble & Johnston on the brief, for appellee.
COUCH, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., concur and filed a concurring opinion at page 26 infra.
For the third time since 1978,[1] we are here concerned with a question regarding whether the Maryland Health Services Cost Review Commission[2] (the Commission) is empowered to review a hospital's application for a rate increase for certain medical specialties[3] furnished to patients.
The factual backdrop for this controversy is not in dispute. Suffice it to say that in June, 1981, the Executive Director of the Harford Memorial Hospital (Hospital) formally requested the Commission's approval of a temporary rate increase of its previously approved hospital rates to reflect the inclusion of the professional fees to its radiologists. Subsequently, the Commission staff found, in pertinent part:
"1) The current radiologists bill patients directly for services and their contract expires June 30, 1981.
2) The Hospital has signed a new contract with a different radiologist effective July 1, 1981. This new contract, in the staff's opinion, and in the opinion of the Commission's attorney, establishes a contractual arrangement whereby the Hospital acts as billing agent to *19 the physician rather than an employee relationship.
3) ...
4) Per the decision in the court proceeding known as Holy Cross III, the Commission lacks the jurisdiction to regulate these physicians."
Furthermore, the Commission staff recommended dismissal of the application "[s]ince the Commission lacks the authority to regulate the fees of the radiologists...."
Thereafter, on July 1, 1981, at a public meeting, the Commission adopted the staff recommendation and issued an order nisi denying the rate application "for the reasons stated in the Staff Report and Recommendation...." Curiously, the Commission also provided "the Commission will allow the hospital to charge for the professional component of Radiology as a physician service in accordance with proposed regulation 10.37.03.06." Being dissatisfied with this result, the Hospital noted an appeal to the Circuit Court for Harford County. Judge Albert P. Close concluded that the matter was within the authority of Commission review and thus remanded the case to the Commission for such review. In his memorandum opinion, Judge Close stated in pertinent part:
"In Holy Cross III [290 Md. 508, 431 A.2d 641 (1981)], and Holy Cross I, 283 Md. 677 [393 A.2d 181] (1981), the Court of Appeals has clearly enunciated the principle that where the charges of specialists are a part of the total costs of the hospital which means the hospital's expenditures or outlays of money in connection with the operation of the hospital, the Health Services Cost Review Commission is empowered to review and set charges by specialists. In Holy Cross, the fees charged by the specialists were placed on hospital accounts and billed by the hospital in such amounts to the patients. In this instance the Court held, and rightly so, that the fees charged were not a part of the total costs of the hospital.

*20 In the instant case, the Hospital has agreed to an annual guaranteed remuneration to the radiologist and would bill patients and third-party payors for radiologist services on a proposed unit value for various procedures, without regard to its ability to recover payment from patients and third-party payor. Such an arrangement does bring the radiologist's compensation based upon relative unit values directly within the total costs of the Hospital and thus within the authority of Commission Review, as provided by the statute."
An appeal was noted by the Commission to the Court of Special Appeals. Subsequently, prior to argument before that court, the Commission petitioned us for a writ of certiorari, which we granted.
Central to (and dispositive of) the question now before us is whether the Commission's reliance on our decisions in Holy Cross Hospital v. Health Services, 283 Md. 677, 393 A.2d 181 (1978) (Holy Cross I) and Health Services v. Holy Cross Hospital, 290 Md. 508, 431 A.2d 641 (1981) (Holy Cross III) was misplaced. Because of the factual differences that exist between the arrangements in Holy Cross I and the present case, we believe that reliance to have been misplaced. We explain.
In Holy Cross I, Judge Smith set forth the arrangement the hospital had with certain physicians practicing their specialties of pathology and radiology as follows:
"The doctors are members of the medical staff of the Hospital, just as numerous other physicians are members of such staff being assigned to the appropriate clinical department such as general medicine, surgery and the like, according to their respective specialties. For a number of years physicians in their categories conducted their own billing and collection operations, completely independent of the Hospital. This procedure was changed in 1972. At the times pertinent to this *21 proceeding each of the physicians had a contract with the Hospital by which it was to supply him with suitable space and certain equipment and supplies. Each of them was to act as the director of his respective department in the Hospital and to provide services to patients within those specialties. The Hospital director testified that the prior separate billing system resulted in numerous complaints from patients who, after paying the Hospital's bill, were chagrined to receive yet another bill from a physician who had performed a special service. As a result, the system was changed so that the Hospital billed for those specialties. Each month the Hospital remits to the respective physicians an amount equal to the gross billings on their behalf for the previous month, less 15% `retain[ed] to compensate it for bad debts and as reimbursement for the cost of administering' the contracts with the physicians. Each of the physicians is obligated to provide services without charge to any individual `determine[d] to be medically indigent, non-pay or part-pay....'" 283 Md. at 681-82, 393 A.2d at 183-84. (Brackets in original; footnote omitted).
In the instant case, the contract between Harford Memorial and the radiologists calls for payment of fees on "the basis of Relative Value Units" as established by the Commission for procedures and services. Where unit values for procedures are not listed by the Commission, the radiologist is responsible for the development of such values, using as a basis those unit values already established. For example, paragraph (9) of the contract provides for the following remuneration for July 1, 1981 to June 30, 1982:
"Hospital will guarantee fees for diagnostic radiology services totaling ... based upon 200,000 Relative Value Units. For Relative Value Units in excess of 200,000 Radiologist will receive ... per Unit. For Relative Value Units below 180,000 fees *22 paid to Radiologist will be reduced by ... per Unit. Hospital will guarantee fees for nuclear imaging services totaling ... based upon 40,700 Relative Value Units. For Relative Value Units in excess of 40,700 Radiologist will receive ... per Unit. For Relative Value Units below 35,000 fees paid to Radiologist will be reduced by ... per Unit."
The Hospital then is responsible for billing the patient for an amount as it sees fit. Paragraph (11) of said contract states:

"Billing and collection for services rendered by the Radiologist, radiologists, and employees performing services in the Radiology Department, shall be the responsibility of, and at the sole expense of the Hospital. The Hospital shall serve as collection agent for Radiology Department services, and upon obtaining the necessary assignments from the patients (and Radiologist, if necessary), shall obtain reimbursement of the allowable radiologist compensation from the carrier under Part B, Title XVIII, P.L. 89-97. All payments by patients and other persons and third parties for any and all services performed with the Radiology Department shall be paid to and for the benefit of the Hospital. In addition, the Hospital shall establish rates to be charged by the Radiology Department. The Radiologist shall not, under any circumstances, submit any billing directly or indirectly to any patient or other party for any services performed within the Hospital's Radiology Department." (Emphasis supplied.)
In Holy Cross I, we pointed out:
"The General Assembly was careful to spell out its legislative intent when it created the Commission. Section 568H [Art. 43,] states in pertinent part:
`In creating the Health Services Cost Review *23 Commission, the intent of the Maryland General Assembly shall be as follows:
`(1) The purpose of this subtitle is to create a commission which will beginning July 1, 1971, cause the public disclosure of the financial position of all hospitals ... and the verified total costs actually incurred by each such institution in rendering health services ... and which after the expiration of three or four additional years, as hereinafter set forth, will also review and certify as to the reasonableness of the rates established by these institutions....
`(2) From and after July 1, 1974, an additional responsibility of this Commission is to assure all purchasers of health care hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital [and] that the hospital's aggregate rates are set in reasonable relationship to the hospital's aggregate costs....'
The key words there are `verified total costs ... incurred ... in rendering health services' and `total costs of the hospital ... reasonably related to the total services offered by the hospital....' Thus, the powers of the Commission spelled out in § 568U `to initiate such reviews ... as may be necessary to assure all purchasers of health care hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital' are consistent with that set forth in the legislative intent. Accordingly, in order for the Commission to have the power to set the charges of the physicians with which we are here concerned it must be found that those charges constitute a part of `the total costs of the hospital.' This term is no more restrictive than the specified legislative *24 intent of `verif[ying] total costs actually incurred by each such institution in rendering health services' with the expressed desire that the Commission `assure all purchasers of health care hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital [and] that the hospital's aggregate rates are set in reasonable relationship to the hospital's aggregate costs....' Therefore, for the Commission to have the power it seeks it must be determined that the charges of these physicians constitute a part of `the total costs of the hospital....' 283 Md. at 687-88, 393 A.2d at 186-87. (Brackets in original).
Considering the term in its ordinary signification, as defined in Webster's New International Dictionary of the English Language (2d ed. unabridged 1959), we concluded that "`total costs of the hospital' mean[t] the Hospital's expenditures or outlays of money in connection with the operation of the Hospital." 283 Md. at 689, 393 A.2d at 187. We further concluded that on the record before us, we were unable to find that the fees charged by radiologists were a part of the "costs of the hospital." Id. Nevertheless, because we recognized "the possibility that at the time of the enactment of th[e] statute the words `total costs of the hospital' might have been a term `of art' in the health care field having a well understood meaning different from its common signification which would include the fees of the [involved] physicians[,]" Id., we remanded the case for further proceedings so that the Commission would have an opportunity to present evidence of such an understanding of the meaning of the term within the health care field. Apparently misconstruing our mandate, no evidence was introduced upon remand reflecting on the "term of art" issue. Accordingly, in Holy Cross III, we held that:
"Since the Commission failed to prove that the words `total costs of the hospital' were a term of art so as to cause them to have a meaning in the statute *25 different from the common, ordinary signification of the term, it follows that the Health Services Cost Review Commission exceeded its authority in the case at bar and its order must be reversed." 290 Md. at 518, 431 A.2d at 646. (Footnote omitted).
While the Commission argues that the contract between Harford Memorial and the radiologist and the arrangement between Holy Cross and its radiologist are substantially similar, we conclude there are dissimilarities. Probably the most significant difference between the two arrangements, within the context of determining "total costs of the hospital," is that in Holy Cross 85% of the physician's fee is paid to him by the hospital, with the remainder retained by the hospital for bad debt offset and administrative expenses; in Harford, however, the physician is paid 100% of his billing, which is based on "Relative Value Units." The hospital in Harford bills the patient what it chooses for and on its own behalf. Thus a comparison of the two arrangements demonstrates that in Holy Cross it is the physician who controls what a patient is billed, whereas in Harford it is the hospital which controls the billing. In our view, this difference is sufficient to allow us to conclude that the amount paid to the radiologist in Harford is a component of the "total costs of the hospital" as it is clearly an expenditure or outlay of money in connection with the operation of the hospital. See Holy Cross I, supra.
Another dissimilarity between the two arrangements is that in Holy Cross it would appear the hospital is actually collecting for the physician, whereas in Harford the hospital is collecting for itself.
The appellant further asserts that the "pivotal factor" in determining jurisdiction of the Commission is "whether the relationship between the Hospital and physician in question is one of employer-employee or rather one of independent contractor, i.e., whether the Hospital is merely the billing agent for the physician." We see no merit to this argument and would point out merely that the Commission has misinterpreted the issue explicitly set forth in Holy Cross I, *26 283 Md. at 679, 393 A.2d at 182, and as discussed above (i.e., "whether fees charged by physicians in certain medical specialties to hospital patients, which fees are placed on hospital accounts and billed by the hospitals in such amounts to the patients, constitute a part of `the total costs of the hospital' so as to be considered as `reasonably related to the total services offered by the hospital'" and thus reviewable by the Commission).
In sum, we hold that the Commission had authority to review the application in the instant case and that Judge Close was correct in so ruling.
Order affirmed; costs to be paid by appellant.
Eldridge and Davidson, J.,J., concurring:
We concur in the result in this case for the reasons set forth in the dissenting opinion in Health Services v. Holy Cross Hosp., 290 Md. 508, 519-546, 431 A.2d 641, 646-660 (1981).
NOTES
[1] See Holy Cross Hospital v. Health Services, 283 Md. 677, 393 A.2d 181 (1978) (Holy Cross I) and Health Services v. Holy Cross Hospital, 290 Md. 508, 431 A.2d 641 (1981) (Holy Cross III).
[2] Judge Smith pointed out for the Court in Holy Cross I that "The Commission was created by Chapter 627 of the Acts of 1971." [(now codified as Health-General Article, Sec. 19-201, et seq. of the Maryland Code (1982).] Previously codified as Md. Code (1957, 1980 Repl. Vol.), Art. 43, §§ 568H-568Z, these provisions now fall within Code (1982) Health-General Article, §§ 19-201  19-222.
[3] Radiology and nuclear medicine.